### STILES v. LAWRIE.
### No. 11888.

United States Court of Appeals
Sixth Circuit.
March 22, 1954.

Lowell W. Taylor, Memphis, Tenn., Max Bresler, Memphis, Tenn., on brief, for appellant.

Don G. Owens, Memphis, Tenn., Nelson, Norvell, Owens & Floyd, Memphis, Tenn., of counsel, for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

In a personal injury case arising out of a collision between an automobile and a tractor, the jury's verdict was no cause of action. Appellant filed a motion for

a new trial on the ground that the jury, in arriving at its verdict, considered incompetent documentary evidence that was neither introduced nor offered by either party during the trial. The motion for a new trial was denied and appellant, in this court, seeks reversal of the judgment of no cause of action and a new trial on the same grounds upon which he based his motion for a new trial before the district court.

Appellant was a passenger in an automobile driven by Mr. C. E. Atkins, which, at the time of the accident, was traveling in an easterly direction on a main highway in Arkansas. Appellee's tractor, driven by a young farm hand in her employ, approached the east and west highway from the south. The operator of the tractor gave contradictory testimony as to whether he stopped and looked to the right and left before entering the highway or whether he drove onto the highway without looking. In any event, he drove across the middle line of the highway and then turned west. Three-fourths of the tractor was north of the middle line of the highway as he turned to the west in the direction from which the automobile was approaching. The automobile, then, was on the south side of the highway, going east, and the tractor—three-fourths of it—on the north side, going west. Just before the collision, the tractor headed over into the path of the oncoming car. Apparently the farm hand became frightened and jumped from the tractor before it crossed over to the south. The driver of the car drove to his extreme right over onto the shoulder of the road. The collision occurred on the extreme southerly side of the highway where the car, in which appellant was riding, was on its proper side of the road.

The legal speed limit on the highway was fifty miles an hour. Witnesses on behalf of appellant testified that the automobile was traveling at a rate of forty to forty-five, or forty-five to fifty miles an hour. Witnesses for the appellee testified that the automobile was exceeding the legal speed limit, and traveling sixty or sixty-five miles per hour. The surface of the highway was asphalt. There were skid marks made by the automobile for a distance of ninety feet on the highway surface.

After the case had been submitted to the jury and they had retired to their deliberations, it appears by affidavits filed on the hearing of the motion for a new trial that one of the jurors, on the second day of deliberations, brought into the jury room a manual published by the Highway Department of the State of Tennessee, purporting to show the various speeds at which cars were traveling when they made skid marks of various distances. The juror in question told the other members of the jury what the manual was, and read from it. He then placed it on the table and various members of the jury thereafter looked at it. After the case had been given to the jury, they deliberated all of the afternoon of the first day. At that time, they were divided, according to the testimony of the foreman, about seven to five in favor of appellee. After a recess, the jury returned the next morning. After some discussion, the first poll showed seven to five in favor of appellee; the second, ten to two in favor of appellee; and the third, eleven to one in favor of appellee. Their conclusions were based upon the excessive speed at which the automobile was being driven at the time of the accident. Finally, at the end of the morning session, the foreman was about to summon the marshal and report a disagreement of the jury, when the sole dissenter agreed to a unanimous verdict.

■■■■ Generally, a juror's testimony will not be received, either to impeach or support a verdict, but it may be received if it relates to extraneous influences brought to bear upon the jurors; they may show by their testimony what the extraneous influence was, and whether it was of a nature calculated to be prejudicial. After a jury has retired, nothing further should reach it in any form whatsoever, unless by order of the court,

in strict conformity with established jury law procedure. Liggett & Myers Tobacco Co., Inc. v. Imbraguglia, D.C.Md., 73 F.Supp. 909. Receiving incompetent documents by a jury requires that the verdict be set aside, unless entirely devoid of any proven influence or the probability of such influence upon the jury's deliberations or verdict. See Jorgensen v. York Ice Machinery Corp., 2 Cir., 160 F.2d 432. It is not for the court to say whether there was sufficient evidence adduced at the trial to justify the finding of the jury, and that the evidence improperly received by them could have had no influence on the verdict. This is purely a matter of fact and not within the province of the court to determine, for the law has no criterion by which to know or ascertain the effect which the improper evidence may produce upon the verdict. When improper evidence, that may have prejudiced the case, has been received by the jury, the law will so presume. Street Railroad & Telephone Companies v. Simmons, 107 Tenn. 392, 64 S.W. 709.

■ The last juror to agree to the verdict testified that the question that most concerned the jury during their two days of deliberations was the speed of the car; that he himself was, at first, of the opinion that the driver of the car was guilty of no negligence whatever; that after the highway manual was produced in the jury room, he was persuaded that the speed of the car had a lot to do with the happening of the accident; and that it was after the production of the manual and further discussion that he, and the jury as a whole, arrived at a verdict in favor of appellee. The foreman of the jury was asked by the trial court whether the manual played any important part in the final verdict of the jury, and his reply was: "I don't know, Judge." Neither did the district court know, nor could it have known, whether this evidence, introduced without the knowledge of court or counsel after the retirement of the jury, influenced the verdict; and, certainly, this court, farther removed from the trial, could have no way of knowing what effect this extraneous evidence produced upon the verdict.

Under the foregoing circumstances and in accordance with the authorities above mentioned, the verdict and judgment are set aside and the case remanded to the district court for a new trial.