**B. R. KILGORE, Plaintiff,**

v.

**GREYHOUND CORPORATION, SOUTHERN GREYHOUND LINES,**
Defendant.

**Civ. A. No. 3642.**

United States District Court
E. D. Tennessee, S. D.

May 2, 1962.

William T. Roper, Chattanooga, Tenn., Lindsay H. Bennett, Jr., Rossville, Ga., for plaintiff.

Strang, Fletcher, Carriger & Walker, Chattanooga, Tenn., for defendant.

NEESE, District Judge.

This is an action for personal injuries arising from the collision on the streets of Chattanooga, Tennessee, of a Greyhound bus and an automobile in which the plaintiff Kilgore was riding as a guest in midafternoon on Labor Day weekend, 1960. The jury returned a verdict for the defendant, and the plaintiff has filed a motion seeking to have such verdict and the judgment entered thereon set aside and a new trial granted him.

The first four grounds of the motion may be disposed of summarily by the Court with the following statement: there were sufficient facts in dispute to submit the factual issues to the jury, and there was sufficient evidence to support the finding of the jury that the defendant's driver was guilty of no negligence. It would be speculative to assume, as the plaintiff's motion implies he has, that the jury verdict might have been founded on the contributory negligence of the driver of the automobile in which the plaintiff Kilgore was riding when injured; therefore, it cannot be said that the jurors acted contrary to the law charged by the Court as to the nonimputability of the driver's contributory negligence to the plaintiff, his guest.

The fifth ground of the plaintiff's motion complains of the Court's failure to charge plaintiff's request to specially charge the jury No. II, as follows:

"I further charge you that even though the plaintiff was negligent and negligently placed himself in a position of peril, if the defendants (sic) employee Albert Capley discovered, or by the exercise of ordinary care should have discovered the plaintiff's peril in time to avoid the accident or the consequence of the plaintiff's negligence by the exercise of ordinary care, and the defendants (sic) employee Albert Capley failed to exercise such care, then the defendant is guilty of negligence and is liable under the doctrine of Last Clear Chance."

This request was denied because the Court had already correctly and amply charged the doctrine of the last clear chance and further because the words in the requested charge, " * * * or by the exercise of ordinary care *should have discovered* the plaintiff's peril * * * *", etc., misstate the law of Tennessee. The doctrine of the last clear chance is also the doctrine of discovered peril, and the defendant was not responsible under the doctrine unless its driver had actual knowledge of the peril. Hadley v. Morris, (1951), 35 Tenn.App. 534, 543, 249 S.W.2d 295. The only exceptions to this rule are persons en-

gaged in businesses hazardous to the public who operate dangerous instrumentalities. Todd v. Cincinnati, N. O. & T. P. R. Co., 135 Tenn. 92, 105, 185 S.W. 62, 65, L.R.A.1916E, 555. No automotive vehicle, per se, has yet been declared a dangerous instrumentality so far as this Court is advised. Accordingly, the requested instruction was properly denied.

The final ground of the motion is that the plaintiff was prejudiced by the misconduct of a juror who allegedly (1) visited the scene of the accident, (2) conducted an experiment to determine the authenticity of facts adduced from the witness stand, (3) investigated a Greyhound bus, and then sought to influence his fellow jurors with the conclusions he had reached. This ground of the motion is supported by affidavits of two of the jurors, one of whom stated that he told the experimenting juror that these statements would have no effect on him, and the other of whom is silent as to whether she was affected by this extraneous discussion. This ground presented the Court with a perplexing procedural situation.

■ ■ The governing principle in the Court's acting on a motion for a new trial is whether, in the judgment of the trial judge, such course is required in order to prevent an injustice; and where an injustice will otherwise result, the trial judge has the duty as well as the power to order a new trial. Aetna Casualty and Surety Co. v. Yeatts (1943), C.A.4th, 122 F.2d 350; Sunray Oil Co. v. Allbritton (1951), C.A.5th, 187 F.2d 475, dissent of Judge Holmes at pp. 477–484; Garrison v. United States (1932), C.A. 4th, 62 F.2d 41; United States v. Robinson (1947), D.C.D.C., 71 F.Supp. 9. But new trials on grounds which do not prejudice the substantial rights of the unsuccessful parties are prohibited. Rule 61, Federal Rules of Civil Procedure, 28 U.S.C.A. The motion may be granted, however, if the jury was guilty of misconduct. Jorgensen v. York Ice

Machinery Corp. (1947), C.A.2nd, 160 F.2d 432; California Fruit Exchange v. Henry (1950), D.C.Pa., 89 F.Supp. 580, affirmed 184 F.2d 517; Hartman v. White Motor Co. (1952), D.C.Mich., 12 F.R.D. 328.

Standing over against this is the ancient rule promulgated by Lord Mansfield in Vaise v. Delaval to the effect that jurors may not impeach their verdict by evidence which comes from the jurors themselves. This rule has long been followed in the American courts as being necessary to the preservation of the sanctity of jury deliberations. See Webb v. U. S. Lines Co. (1959), C.A.2nd, 266 F.2d 611 and a long line of earlier holdings. If this were not the rule every jury verdict would be subject to attack, and jurors could anticipate being subjected to unending harassment by counsel seeking to salvage a new trial from unfavorable jury verdicts.

■ The Supreme Court of the United States is committed to the proposition that affidavits of jurors will not be received for purposes of impeaching their verdict. McDonald v. Pless (1915), 238 U.S. 264, 267–269, 35 S.Ct. 783, 59 L.Ed. 1300. However, the Court therein observed that each jurisdiction must be in a position to adopt and enforce its own self-preserving rules; and, the several United States Circuit Courts of Appeal have adopted and enforced varying rules. Cf: Orenberg v. Thecker (1944), 79 U.S. App.D.C. 149, 143 F.2d 375; Lohr v. Tittle (1960), C.A.10th, 275 F.2d 662, and others.

■ The rule adopted and enforced in the Sixth Circuit and binding on this Court is as follows:

"Generally, a juror's testimony will not be received, either to impeach or support a verdict, but it may be received if it relates to extraneous influences brought to bear upon the jurors; they may show by their testimony what the extraneous influence was, and whether it was of a nature calculated to be prejudicial.

After a jury has retired, nothing further should reach it in any form whatsoever, unless by order of the court, in strict conformity with established jury law procedure. * * * " Where the jury received and considered improper evidence which may have had prejudicial effect, the presumption of law is that the improper evidence did influence the jury (citing Street Railroad and Telephone Companies v. Simmons, 107 Tenn. 392, 64 S.W. 705, 709). Stiles v. Lawrie (1954); C.A.6th, 211 F.2d 188, 189–190 (also citing Jorgensen v. York Ice Machinery Corp., supra).

Any time a new trial is sought on the basis of the misconduct of a juror, or the receipt and consideration by a jury of improper evidence which may have had prejudicial effect on the jurors, the Court is forced to choose between the possibility that a party litigant may have been done an injustice, and, on the other hand, the possibility that the Court will inflict a public injury which will result if jurors are permitted to testify regarding what happened in the jury room.

In the case at bar the Court had no way of ascertaining the truth of the matter without allowing a limited departure from the general rule. The Court felt that the least public injury would result in determining from the allegedly offending juror the facts as to the nature and extent of his purported misconduct, because in this way the Court could appraise the character of the extraneous influence on the jury and decide whether it was of such nature as might reasonably have been prejudicial to the plaintiff Kilgore. The Court perceived its duty to be the ascertainment of whether the verdict reached by the jury was in any other way than by a conscientious observance of the oath each juror took to decide the case well and truly on the law and the evidence. United States v. Brandenburg, C.A.3rd, 162 F.2d 980, 983.

The juror J. B. Deal testified under oath on the hearing of the motion that he had passed the scene of this accident while the trial was in progress and the jury was deliberating but that he never did stop there. He said that it was his custom when in Chattanooga to drive in that direction to visit his sister-in-law who is ill with cancer in a suburban area reached by this route. He also testified that while attending court he customarily left his automobile in a parking lot near a bus station, and on the day the jury was excused overnight while deliberating he stopped and looked into and around a parked Greyhound bus. Finally he admitted he drove his car into a truck stop on business and upon leaving had to negotiate his car around a large milk truck and that it suddenly struck him that it was a similar "set up" to the description he had heard from the witness stand concerning the relative positions of the bus and the automobile in which the plaintiff Kilgore was riding when his accident occurred, the milk truck being similar in size and in other ways to a bus. He denied making an "experiment" and said that his placing his car in such a relation to the milk truck that it reminded him of the testimony at the trial was "unintentional", and that he was merely leaving the truck stop when he noticed the similarity of the physical relationships of the two vehicles.

This juror also admitted that he undertook to recount his experience the following day when all the jurors had reassembled to continue their deliberations; whereupon, the jury foreman immediately reminded him that he was not to bring in evidence from outside the courtroom; that he should not consider such himself; and that all the jurors should disregard what the juror Deal had said and not consider such extraneous matter in arriving at their verdict. Deal stated flatly that his excursionary experiences did not influence his own verdict; and of the two affidavits submitted by counsel

to impeach the jury verdict, one flatly states that Deal's statement "would have no effect on me", while the other affiant is silent on the question of whether such improper discussion had influenced her vote against the plaintiff.

The Court then inquired whether counsel for the plaintiff had included in the affidavits of the other two jurors all the information supporting the charge of Deal's misconduct they were able to acquire. On the admission that this was the case, the Court considered further inquiry unnecessary to a ruling on this ground of the plaintiff's motion.

From all the foregoing the Court is of the opinion that the ill-advised extra-curricular actions and resulting comments of the juror Deal does not give rise to the presumption that the jury was improperly influenced thereby. Deal's comments could not have added to or changed the facts the entire jury heard from the witness stand. His fellow jurors would have been naive indeed to have accepted as "expert testimony" Deal's conclusions from his experience outside of court. This is wholly unlike the situation in Stiles v. Lawrie, supra, where a juror brought into the jury room a handbook from a respectable authority bearing on the principal issue in the lawsuit and laid it on the table for all to assay and from which all the jurors could draw their own conclusions from what they read therein.

The Court concludes that the substantial rights of the plaintiff were not prejudiced by this juror's conduct; therefore a new trial will not be granted. Rule 61, Federal Rules of Civil Procedure.

The Court, having overruled each and every ground of the plaintiff's motion for a new trial, awaits the submission of a proper order accordingly by counsel.