**Olive B. FAITH, Administratrix of the Estate of Melvin E. Faith, deceased, Plaintiff,**

**v.**

**John Taylor NEELY, Defendant.**

**No. 335-M.**

United States District Court
N. D. West Virginia.

Dec. 28, 1966.

Clarence E. Martin, Jr., Martinsburg, W. Va., for plaintiff.

Robert M. Steptoe, Martinsburg, W. Va., for defendant.

MAXWELL, Chief Judge.

Plaintiff in the above-styled civil action filed suit against John Taylor Neely, now deceased, after an automobile driven by Melvin E. Faith, plaintiff's husband, collided with a tractor-trailer driven by Neely, near Berkeley Springs, West Virginia. This accident resulted in the death of plaintiff's husband. On May 17 and 18, 1966, a jury trial was held and a verdict was returned in favor of the defendant.

Plaintiff thereafter submitted a motion for a new trial, contending that (1) the jury verdict was not consistent with the evidence, (2) the Court, before it allowed testimony as to the alcoholic content of Melvin E. Faith's blood, did not first establish that the vial, in which the investigating state patrolman had placed a blood sampling, was uncontaminated, (3) the Court erred in instructing the jury on contributory negligence, since there is nothing in the record to indicate that the plaintiff's decedent had been contributorily negligent, (4) the Court erred in failing to instruct the jury on last clear chance, and (5) one of the jurors was guilty of misconduct.

After careful consideration, the Court has determined to deny plaintiff's motion.

As to the first contention, it is, of course, elemental that a jury verdict will be set aside if the evidence so overwhelmingly conflicts with the verdict as to indicate that the jury was moved by passion, prejudice, or some other improper influence. 6 *Moore's Federal Practice, New Trials*, § 59.08(4), note 5 (1965). As is indicated in the discussion of plaintiff's fifth contention, however, the jury in this case appears to have been completely objective in its deliberations. Therefore, the Court discerns no reason for attempting to undermine the proper function of the jury.

As to the plaintiff's second contention, the Court notes that the condition of the vessel into which Melvin E. Faith's blood specimen was deposited for shipment to the testing laboratory, like the interval between the accident and the extraction, is at most a matter affecting the weight of the evidence, to be considered by the jury. Moreover, the jury heard Dr. Walter Fix, a pathologist who testified for the defendant, explicitly state that any blood test would not be

reliable if the container were not clean and uncontaminated. Therefore, this contention also lacks merit.

◼ Plaintiff's third contention is that the Court erred in instructing the jury on contributory negligence, since there is nothing in the record to indicate that the plaintiff's decedent had been contributorily negligent. In support of her position, plaintiff states that the record does not show Melvin E. Faith to have been involved in a prior accident on the fatal night. Plaintiff is correct as to this state of the record. However, there was sufficient other testimony, alleging that Faith had been drinking, that he was traveling at a high rate of speed, and that he was driving in the dark with his headlights out, to merit an instruction on contributory negligence.

◼ In her fourth contention, plaintiff argues that the Court erred in failing to instruct the jury on the doctrine of last clear chance. The doctrine, as applied in West Virginia, is succinctly stated in Barr v. Curry, 137 W.Va. 364, 71 S.E.2d 313, 318 (1952), where four possible factual situations are set out: (1) where the danger was actually discovered by the defendant, and the injured person was physically unable to escape the danger; (2) where the danger was actually discovered by the defendant, but the injured person was physically able to escape the danger; (3) where the danger was not actually discovered by the defendant but should have been discovered by him and the injured person was physically unable to escape the danger; and (4) where the danger was not actually discovered by the defendant but should have been discovered by him, and the injured person was physically able to escape.

◼ Without examining all the ramifications of the last clear chance doctrine, and without determining which of the above factual situations would allow plaintiff to recover, suffice it to say that the last clear chance doctrine is not here applicable, especially in view of the above-mentioned testimony concerning Faith's alleged contributory negligence, because the Court can say, as a matter of law, neither that the defendant had actually discovered the danger, nor that he should have discovered the danger.

The main thrust of plaintiff's motion for a new trial, therefore, is her fifth contention, where she alleges that one of the jurors was guilty of misconduct, thereby depriving her of a fair trial. Specifically, she contends that one of the jurors was intoxicated during the trial and during jury deliberations, that on voir dire the juror did not reveal that he was familiar with at least some of the circumstances surrounding the accident, and that he produced a drawing for the benefit of the other eleven jurors, ostensibly setting out the lay-out of the road and the other physical features surrounding the accident.

The above is as alleged. However, the Court notes that if the juror did show the others a diagram which he had drawn of the accident scene, with which he had some familiarity, he almost certainly would also have uttered some statement, disclosing his personal knowledge. Therefore, the Court also assumes plaintiff meant to incorporate the likelihood of this misconduct into her motion for a new trial.

◼ Before delving into the merits of the fifth contention, it should be noted that during the two days in which the trial was conducted, the Court's scrutiny of the jury gave no reason to suppose that any juror was acting improperly. We may be justified in refusing to grant a new trial on this basis alone, Peterman v. Indiana Motorcycle, 216 F.2d 289 (1st Cir. 1954), especially since the Court failed to detect any misconduct during the trial and this was apparently coupled with the plaintiff's similar failure to note any improper conduct, or, at least, her failure to bring any suggestion or observation of improper conduct to the Court's attention on the occasion of its occurrence.

The Court, however, has also sought to determine from the jurors themselves whether any misconduct affected their verdict and thus deprived the litigants of a fair trial.

One reason for proceeding as such was to determine from the jurors whether the alleged misconduct contaminated their verdict. Secondly, and of paramount importance, this alternative was pursued not only because there are precedents for so doing, but also because the allegations and actions of the plaintiff, surrounding the preparation of her motion for a new trial, clearly dictate that the Court must accept, in this case, the general teaching of these precedents.

■ As to the first reason, the Court is, of course, cognizant of the broad rule, first laid down by Lord Mansfield in Vaise v. Delaval, 1 Term Rep. 11, wherein it is said that a juror may not impeach his own verdict.

If Lord Mansfield's rule had been conclusively accepted in the instant case, the Court would have had to deny plaintiff's motion for a new trial without further inquiry, for the misconduct of which she complains could not have been inquired into by the Court. As is demonstrated below, this conclusion would have been no different than the one we have herein reached.

■ Now to the second reason. After examining a number of cases on this question, the Court concluded that to the extent necessitated by the plaintiff's charge, the Court would be justified in making certain inquiries of the jury.

This alternative has been suggested in McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915), a case involving a quotient verdict. Although Lord Mansfield's rule was there upheld, but see Jorgensen v. York Ice & Machinery Corp., 160 F.2d 432 (2d Cir. 1947), cert. den. 332 U.S. 764, 68 S.Ct. 69, 92 L.Ed. 349 (1947), the *McDonald* court also said in dicta at 238 U.S. 267–269, 35 S.Ct. 783 that there might be other instances when a jury's testimony should be heard, and, therefore, it avoided formulating an inflexible rule.

This Court, after examining a number of the reported cases, notes that federal courts, even in the face of Lord Mansfield's rule, have on many occasions chosen to interrogate jurors about possible misconduct surrounding their verdicts, thereby taking advantage of the dicta contained in McDonald v. Pless.

In so doing, the courts have articulated at least five different theories in order to justify their departure from Lord Mansfield's rule. One has been that a court, under its general supervisory powers, may recall and interrogate a jury, if justice requires, whenever the court is of the opinion that the jury may have made some mistake or been guilty of some improper conduct which produced its verdict. E. g., Morley v. Cranmore Skimobiles, 67 F.Supp. 812, 813 (D.C. N.H.1946). A second theory is that while a juror's testimony generally will not be received either to impeach or support his verdict, it may be received if it relates to extraneous influences brought to bear on the jurors. E. g., Mattox v. United States, 146 U.S. 140, 148–151, 13 S.Ct. 50, 36 L.Ed. 917 (1892); Stiles v. Lawrie, 211 F.2d 188, 189–190 (6th Cir. 1954); Liggett and Myers v. Imbraguglia, 73 F.Supp. 909, 910–911 (Md. 1947). Another theory is that a juror can impeach his verdict because if his misconduct has been serious enough, he will have already disqualified himself as a juror and is therefore no longer serving in that capacity. E. g., Aluminum Co. of American v. Loveday, 273 F.2d 499, 500 (6th Cir. 1959). A fourth theory would allow inquiry as to statements made by or to a juror outside the jury room. E. g., California Fruit Exchange v. Henry, 89 F.Supp. 580, 587–588 (W.D.Pa. 1950). Under the final theory, a juror's testimony may be received if the court feels that the least public injury will result in the court's determining from the juror whether his misconduct injured a

**366**

party litigant. E. g., Kilgore v. Greyhound Corp., 30 F.R.D. 385, 387–388 (E.D.Tenn.1962).

This Court does not advocate an open assault on Lord Mansfield's rule, for it is true and exceedingly necessary that the secrecy of the jury room should remain inviolate. Neither is this Court attempting to formulate its own exception to Lord Mansfield's rule nor to fit this case under one or all of the above theories.

■ All that this Court now says is that on certain occasions, there is strong legal precedent for the Court interrogating a jury to determine if improper conduct has contaminated its verdict.

■ The Court is further of the opinion that this case is one of those instances, especially since the plaintiff took it upon herself, in preparing her motion for a new trial, to obtain the affidavit of one of the jurors, in which affidavit the complained of misconduct was generally alleged.

In having decided to pursue this alternative, the Court has not been unmindful of the need for secret jury deliberations. Nor has it been unmindful, however, that should the Court allow losing parties, after the jury has returned its verdict, to obtain jurors' affidavits, which generally allude to jury irregularities, without undertaking its own investigation, to determine if the alluded irregularities actually did transpire, the integrity and effectiveness of the jury system would surely and certainly be undermined and eventually destroyed.

It was because of these two reasons, therefore, that the Court directed the United States Marshal to present each juror with a questionnaire, generally dealing with the misconduct alleged. The answers to these questionnaires are contained in a sealed envelope in the Court files of this case. It would not be consistent with the secret nature of jury deliberations nor this Court's investigation to disclose their specific contents.

■ Suffice it to say, however, that the jurors, including the one whose affidavit was taken by the plaintiff, generally suggest that the juror, who allegedly was guilty of misconduct, had not been so intoxicated as to have lost control of his faculties. It further has been made evident that while this juror may not have disclosed on voir dire that he had knowledge of the accident, the plaintiff was not thereby prejudiced, because this juror, whose failure to disclose the plaintiff now complains, was, ironically enough, the only member of the jury panel initially in favor of returning a verdict for the plaintiff. Further, it is apparent from the jurors' answers that the rest of the jury was not influenced in any manner, either by the misguided juror's drawing or by anything he may have said.

This Court, therefore, feels that the necessity for denying plaintiff's fifth contention is made all the more apparent.

■ The mere fact that a juror has been drinking, or has been under the influence of liquor, during any part of the case, generally is not grounds for setting aside the verdict, especially in civil actions, unless it can be shown that the juror's faculties were affected and he could not discharge his duties. 66 C.J.S. New Trial, § 55 (1950); 53 Am.Jur. Trial, § 901 (1945); 39 Am.Jur. New Trial, § 75 (1942). As has been previously indicated, however, the questionnaires returned by the jurors clearly suggest that the juror, whose actions are now in question, was in control of his faculties.

As the answers to the Court's questionnaires also indicate, the plaintiff was not prejudiced by any of the three other acts of which the plaintiff directly or indirectly complains.

The first such act complained of was the juror's failure to give full disclosure at voir dire. Since this failure did not prejudice the plaintiff, however, there is no supportable reason for granting a new trial.

■ While in 31 Am.Jur. Jury, § 143 (1958) it is said that false or misleading information elicited on voir dire is prejudicial to a party because it impairs his right to peremptory challenge, but see Laugherty v. Newcomb, 237 F.Supp. 524 (E.D.Tenn.1962), the cases therein involve prospective jurors who were actually biased or prejudiced against the complaining party. In other words, a new trial will be granted only when the venireman's wilful or inadvertent failure to disclose suggests probable bias against the complaining party, and not merely because the complaining party has passed up a peremptory strike. See Photostat Corp. v. Ball, 338 F.2d 783 (10th Cir. 1964); Slater v. Stoffel, 313 F.2d 175 (7th Cir. 1963); Consolidated Gas & Equipment Co. of America v. Carver, 257 F.2d 111 (10th Cir. 1958); Stephenson v. Steinhauer, 188 F.2d 432 (8th Cir. 1951); Hansen v. Barrett, 186 F.Supp. 527 (D.C.Minn.1960); Lay v. J. M. McDonald, 24 F.R.D. 36 (D.C.Colo.1959), appeal dismissed 274 F.2d 827 (10th Cir. 1959); Truitt v. Travelers Ins., 175 F. Supp. 67 (S.D.Tex.1959), aff'd 280 F.2d 784 (5th Cir. 1960); 39 Am.Jur. New Trial § 45 (1942); 38 A.L.R.2d 624–649. See also Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933).

In this case it is clear that the venireman, whose failure to disclose has been complained of, was in no way prejudiced against the complaining party.

The second act complained of centers on the sketch allegedly shown to the jurors. The plaintiff, however, again is unable to show she was prejudiced. In fact the jurors' answers to the Court's questionnaires indicate the opposite.

■ The rule in this case is also clear. While a document not introduced at trial, and brought in by one of the jurors during deliberations, may be grounds for a new trial where it cannot be said that the document did not influence the verdict, Stiles v. Lawrie, supra, 211 F.2d 188, a new trial will not be granted when a similar document, or drawing, has failed to prejudice the complaining party, whether shown to the jury during trial by one of the attorneys, Watn v. Pennsylvania R. R. Co., 255 F.2d 854 (3rd Cir. 1958), or whether brought into the jury room by one of the jurors, Frazier v. Beard, 201 F.Supp. 395 (W.D. Va.1962).

The last act complained of (although, as the Court has previously explained, this act is more the product of the Court's assumption than the plaintiff's specific allegation) is that the juror revealed to the other jury members facts concerning the accident, which were within his personal knowledge.

■ Here, courts also take the position that while such action is improper, partly because the facts have not been adduced in evidence, a new trial will not be granted where a juror did not thereby demonstrate his own prejudice against the complaining party, Kilgore v. Greyhound Corp., supra, 30 F.R.D. 385; Morley v. Cranmore Skimobiles, supra, 67 F.Supp. 812; cf. O'Neal v. Cowles Magazines, 96 U.S.App.D.C. 204, 225 F.2d 43 (1955); Pough v. Capital Transit, 90 U.S.App.D.C. 185, 194 F.2d 355 (1952), or where he did not thereby prejudice the rest of the jury against the complaining party, Aluminum Co. of America v. Loveday, supra, 273 F.2d 499; Kilgore v. Greyhound Corp., supra, 30 F.R.D. 385; 53 Am.Jur. Trial, § 918 (1945); 39 Am.Jur. New Trial, § 80 (1942); 46 A.L.R. 1509–1512.

Again, however, the jurors, in answering their questionnaires, clearly indicated that the plaintiff was not prejudiced in the afore-mentioned manner.

■ Consequently, the Court is properly exercising its discretion, Peterman v. Indian Motorcycle, supra, 216 F.2d 289; United States v. Kansas City, Mo., 157 F.2d 459 (8th Cir. 1946); Roberts v. United States, 60 F.2d 871 (4th Cir. 1932), when it holds that the juror's conduct was not of such a nature as to merit a new trial.

In conclusion, the Court notes that none of the plaintiff's five contentions set out valid grounds for a new trial. Therefore, an order will be entered, denying the plaintiff's motion.