**Nita B. POGUE, Plaintiff-Appellee,**

v.

**INTERNATIONAL INDUSTRIES, INC., et al., Defendants-Appellants (two cases).**

Nos. 74–2300, 74–2301.

United States Court of Appeals, Sixth Circuit.

Argued June 9, 1975.

Decided Oct. 14, 1975.

James W. Gentry, Jr., Chattanooga, Tenn., for Nita B. Pogue.

Fielding H. Atchley, Jr., Atchley, Atchley & Cox, Chattanooga, Tenn., for International Industries and others.

Before PHILLIPS, Chief Judge, McCREE, Circuit Judge, and FEIKENS,* District Judge.

FEIKENS, District Judge.

Both plaintiff-appellant, Nita B. Pogue, and defendant-appellee, Interna-

tional Industries, Inc., appeal from a judgment for plaintiff in an action to recover damages for breach of a franchise agreement. Plaintiff seeks now to treble the damages awarded her, claiming that the franchise contract into which she entered with the House of Nine, Inc., a subsidiary of defendant, violated the antitrust laws of the United States. Defendant seeks reversal of the judgment.

It appears from the record that, pursuant to buying a retail franchise, plaintiff-appellant (hereinafter referred to as Mrs. Pogue) executed three agreements with House of Nine, Inc. (hereinafter referred to as House of Nine): (1) a sublease for the store premises out of which Mrs. Pogue was to operate the franchise, (2) a fixture and sign lease, and (3) a franchise agreement.[1]

After a training period, paid for by House of Nine, Mrs. Pogue began operating a House of Nine franchise in Chattanooga, Tennessee according to the terms of the executed agreement. House of Nine bought women's clothing from various manufacturers, put on each garment a House of Nine label, ticketed and priced them and sent them on consignment to Mrs. Pogue for sale. Like other House of Nine franchisees, Mrs. Pogue had no control over inventories or pricing. She could sell only those garments sent to her on consignment by House of Nine; she could not buy goods directly from manufacturers and resell them at prices set by her.

Mrs. Pogue was obligated to pay House of Nine a regular rent as a sublessee. She also was required to pay utilities, a charge for insurance on the inventory, a charge for national advertising and a bookkeeping charge. Since the House of Nine clothing was delivered to Mrs. Pogue on consignment, she had no duty to pay for it until the goods were sold to customers, but she was liable to House of Nine for losses due to theft.

---

* The Honorable John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. See Appendix I, containing the relevant portions of the franchise agreement as taken from Judge Wilson's Findings of Fact.

Mrs. Pogue opened her franchised dress shop on June 20, 1970. For the first three months, operations of the franchise were satisfactory to both parties. Sales were in excess of projections. However, by September, 1970 Mrs. Pogue began experiencing the difficulties which led to her suit for breach of contract. Both the quality and the quantity of the merchandise provided to her by House of Nine markedly declined. Mrs. Pogue's sales correspondingly declined and she began losing money. As time went on Mrs. Pogue failed to make payments to House of Nine as they fell due. This continued throughout 1971 and in December, 1971 Mrs. Pogue was forced to close the store. Her successful suit for breach of contract followed.

■■■ Defendant-appellee is International Industries, Inc. and it makes four contentions. It claims that it was not amenable to service of process in the state of Tennessee. We hold that the district court had jurisdiction over the defendant, having made the determination that International Industries, Inc. had ultimate authority and responsibility for the activities of Retail Gallery, Inc. and the House of Nine, Inc.[2] and that those corporations had sufficient contacts with the state of Tennessee to justify service of process upon defendant under the "Tennessee Long Arm Statute". This holding likewise disposes of defendant's second contention that these companies were separate entities not under defendant-appellee's control. With regard to the claim that Mrs. Pogue's amended motion for a new trial was filed after the requisite ten-day rule time period, we conclude that a district court may in its discretion consider the issues raised in the amended motion for a new trial even though it was not filed within the time provided for by the rule where, as here, the original motion for a new trial was filed within the ten-day

rule time period. See Rule 59, Federal Rules of Civil Procedure; Moore's Federal Practice, 6A 59.09[2], at 59–204 through 59–209. See also Rule 60, Federal Rules of Civil Procedure. As to defendant's final contention that the district court's damage award was based on speculation, we hold that it appears that there is substantial evidence in the record to support the corrected amount of the judgment entered by the district court.

We take up Mrs. Pogue's contention that her damage award should be trebled. She makes two arguments. She claims that the franchise agreement created an illegal tie-in arrangement in that in order to buy the franchise trademark which was the dominant tying product she also was illegally required to buy several tied products exclusively from the franchisor. Tied products included the rent, the clothing and the bookkeeping service. She also contends that pre-pricing by House of Nine was illegal price fixing, a per se violation of the Sherman Antitrust Act.

We disagree.

■■■ In this case we do not need to decide the rather complex question of the legality of the existing tie-in arrangement between Mrs. Pogue and House of Nine. The evidence here does not establish a sufficient causal relationship between the tying arrangement and plaintiff's economic injury. In the typical tying arrangement, the victim's injury lies in the higher prices that must be paid for the tied product as a result of the seller's economic power in the tying product market. Accordingly, the ordinary measure of damages would be the difference between the price actually paid for the tied product and the price at which the product could have been obtained on the open market.[3] See Gray

---

2. In 1970 House of Nine was merged into Retail Gallery, Inc.; Retail Gallery, Inc. was doing business at this time both in its own name and in the name of House of Nine. Mrs. Pogue's contract with House of Nine was executed May 26, 1970.

3. When suit is brought by a competitor in the tied product market, a different measure of damages would apply. See Advance Business Systems & Supply Co. v. SCM Corp., 415 F.2d 55, 69–70 (4th Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 101 (1970). The present appeal does not present such a case.

v. *Shell Oil Co.*, 469 F.2d 742, 751 (9th Cir. 1972), *cert. denied*, 412 U.S. 943, 93 S.Ct. 2773, 37 L.Ed.2d 403 (1973). In an extraordinary case, the plaintiff might be able to establish a causal relationship between a tying arrangement and other kinds of economic injury, including business failure. *See Deaktor v. Fox Grocery Co.*, 475 F.2d 1112, 1116–17 (3d Cir. 1973), *cert. denied*, 414 U.S. 867, 94 S.Ct. 65, 38 L.Ed.2d 86 (1973).

■ Whatever measure of damages is applied, it is axiomatic that plaintiff must prove that injury was suffered as a result of the antitrust violation. In this case there is no evidence that Mrs. Pogue incurred higher costs because of the tying arrangement or that the failure of her business resulted from the alleged antitrust violation. At most the evidence demonstrates that a tying arrangement and economic loss both occurred within the same business relationship. Fatally absent is any proof of a causal connection between the two occurrences.

The conclusion we reach here is reinforced by the nature of the damages actually awarded in the district court. These damages are based on the present value of the annual net profits that Mrs. Pogue would have received over the course of the fifteen-year franchise if both parties had complied with the terms of the agreement. Mrs. Pogue does not argue that the award is calculated improperly; she apparently asks us simply to treble the figure computed by District Judge Frank W. Wilson. Thus it appears that Mrs. Pogue is not seeking treble damages for injuries resulting from an illegal contract imposed upon her by the franchisor. Rather, she seeks three times the profits that would have accrued if the franchisor had complied with all contract provisions. We are aware of nothing in the antitrust laws that warrants such a result.

■ As to the claim of price fixing, we observe that the rule prohibiting vertical resale price maintenance is one of long standing. *Dr. Miles Medical Co. v.*

*John D. Park & Sons Co.*, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911); *United States v. General Electric Co.*, 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362 (1926). Were the franchisee in the instant case a retail dealer who actually had title to the garments, the antitrust laws would prohibit House of Nine from setting sales prices. In this case the defendant retained title, dominion and control over its goods by delivering them to Mrs. Pogue on consignment only. In *United States v. General Electric Co., supra,* it was held that:

"The owner of an article, patented or otherwise, is not violating the common law, or the Anti-Trust law, by seeking to dispose of his article directly to the consumer and fixing the price by which his agents transfer the title from him directly to such consumer." 272 U.S. at 488, 47 S.Ct. at 196.

In *Simpson v. Union Oil Co.*, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), the holding in *General Electric* was limited but not overruled. In *Simpson* the court held that the consignment device would not protect a franchisor who used it merely as a cloak for widespread price fixing enforced coercively against franchisees who were in reality independent businessmen. As *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967), demonstrated, the agency consignment method of distribution was not invalidated by *Simpson*. *Schwinn* did not directly concern price fixing but in *Schwinn* the Supreme Court permitted territorial restrictions on distribution where a consignment device was employed, but prohibited it where there was a resale method of distribution. *See, also, Atlantic Refining Co. v. F.T.C.*, 344 F.2d 599 (6th Cir. 1965), *cert. denied*, 382 U.S. 939, 86 S.Ct. 391, 15 L.Ed.2d 350, *reh. denied*, 382 U.S. 1000, 86 S.Ct. 535, 15 L.Ed.2d 490.

The facts of this case differ significantly from *Simpson* and *Atlantic*. In this case Mrs. Pogue was actually an agent. Dominion and control remained with the House of Nine primarily so that high quality and business goodwill might

be maintained. Prices were pre-fixed as part of the maintenance of uniform high quality among all House of Nine franchises. There was here no consignment device used to cover a distribution system through many retail outlets as in *Simpson*. Here Mrs. Pogue was a true agent. The agency relationship was maintained more for the purpose of controlling quality than for controlling price. .

The judgment of the district court denying treble damages to plaintiff accordingly is affirmed.

Since the district court's judgment is affirmed in its entirety and neither party has prevailed on appeal, no costs will be taxed.

## APPENDIX

## HOUSE OF NINE FRANCHISE AGREEMENT

This Agreement, made this 26 day of May, 1970, by and between HOUSE OF NINE, a corporation, hereinafter called "Franchisor" and NITA B. POGUE, hereinafter called "Franchisee" relating to a HOUSE OF NINE retail store located at Eastgate Mall, Chattanooga, Tennessee, hereinafter sometimes called the "franchise location," is made with reference to the following facts:

    \*     \*     \*     \*     \*     \*

**Article I Franchise Fee (Addendum)**

In consideration of the execution of this Agreement by Franchisor, Franchisee shall pay to Franchisor a franchise fee of $30,000.00. Said fee shall be payable $15,000.00 in cash upon execution of this Agreement, . .., and the balance of $15,000.00 in weekly installments of $50.00 or more, including interest at the rate of 8% per annum on the unpaid balance, beginning 13 weeks after said retail store shall have opened for business and continuing until such balance shall be paid in full . . . In the event of default in the payment of any part of such franchise fee when due, then at the option of Franchisor, the entire unpaid balance shall be immediately due and payable.

It is expressly understood and agreed that the franchise fee of $30,000.00 is and shall be fully earned by Franchisor upon its execution of this Agreement, and that no part of said fee shall be refunded or forgiven to Franchisee for any reason whatsoever except as provided in Article XIII hereof.

    \*     \*     \*     \*     \*     \*

### III

### TERM

The term of this Agreement shall commence from the date hereof and shall continue to the date which is fifteen (15) years from the date the Franchisee takes possession of the franchise store, unless the franchise shall be sooner terminated by Franchisor as provided for in this Agreement; provided, however, that the term of the Franchise Agreement shall terminate upon any termination of Franchisor's master lease . . .

    \*     \*     \*     \*     \*     \*

### IV

### SERVICES OF FRANCHISOR

E. **Merchandise.** Franchisor shall furnish or cause to be furnished to Franchisee on consignment, in accordance with Franchisor's standard procedure, merchandise to be sold from the franchise location.

    \*     \*     \*     \*     \*     \*

### V

### DUTIES OF FRANCHISEE

A. **Payments of Franchisor.** In addition to all other payments provided for herein, Franchisee shall pay to Franchisor promptly when due:

(Rent and other charges as set forth in Items 1 through 7)

    \*     \*     \*     \*     \*     \*

B. **Merchandise.** (1) The success of Franchisor's operation being substantially and directly dependent upon the nature, quality and quantity of merchandise carried for sale and upon uniformity and identification with all other HOUSE OF NINE retail stores, Franchisee shall stock and sell only merchandise carrying the HOUSE OF NINE label or such other merchandise as shall have been approved in writing by Franchisor. Franchisee shall at all times maintain an adequate, representative stock of merchandise carrying the HOUSE OF NINE label, as shall be reasonably required by Franchisor. Franchisee may stock other merchandise from alternative sources of supply only with Franchisor's prior written consent   .   .   .

\*   \*   \*   \*   \*   \*

(2) Franchisee shall accept from Franchisor merchandise delivered to Franchisee on consignment. Such merchandise shall be subject at all times to instructions of Franchisor or NINE, as to return or transshipment, and Franchisee agrees to return any such merchandise, or transship it in accordance with Franchisor's instructions, on demand. Freight costs will be paid by Franchisor.

\*   \*   \*   \*   \*   \*

E. **Time.** Franchisee agrees to devote her full time and attention and best efforts to the performance of her duties hereunder, and failure to do so shall constitute a breach of this Agreement. Unless otherwise agreed upon in writing, at no time during the term of this Agreement shall Franchisee engage, directly or indirectly, in any other business activity, whether as principal, agent, employee, partner, stockholder, director, or otherwise; provided, however, that ownership for investment purposes only of less than five percent (5%) of the outstanding securities of any corporation whose securities are publicly held and traded shall not be deemed a violation of this Agreement.