David TISDEL and Barbara
Tisdel, Plaintiffs,

v.

Daniel H. BARBER, a/k/a Daniel Barber,
George Paletta, Hillandale Sales Corp.
and Weschester Industrial Sales, Inc.,
Defendants.

No. 95 Civ. 5204(WCC).

United States District Court,
S.D. New York.

July 9, 1997.

---

Keegan, Keegan & Associates, P.C., White Plains, NY, for Plaintiffs; John W. Keegan, Jr., of counsel.

Harms, Della Jacono & Finneran, Elmsford, NY, for Daniel H. Barber, A/K/A Daniel Barber and George Paletta; William K. Capshaw, of counsel.

LaRose & LaRose, Poughkeepsie, NY, for Defendants Hillandale Sales Corp. and Weschester Industrial Sales, Inc.; Keith V. LaRose, of counsel.

## *OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge.

Plaintiff David Tisdel ("Tisdel") brought this diversity action seeking damages for personal injuries allegedly suffered in 1994 when he slipped and fell on ice near a building owned by defendants Daniel Barber and George Paletta (the "Owners"). Plaintiff has also sued Westchester Industrial Sales, Inc., a tenant of the building at the time of the fall (the "Tenant"). On November 7, 1996 a jury rendered a verdict in the amount of $25,000 in favor of Tisdel against the Owners, although it found Tisdel responsible for 10% of his injuries. We entered judgment for $22,-500 initially on November 13, and on November 20, Tisdel moved under FED.R.CIV.P. 59 to set aside the verdict and for a new trial on the issue of damages on the grounds that the damage award is internally inconsistent, against the weight of the evidence, and inadequate. On December 6 we entered an amended judgment to reflect the dismissal of the Tenant. On April 10, 1997 we granted the Owners permission to cross-move to set aside the liability portion, and on April 14 they filed their motion arguing that the Tenant properly should have been held liable as well.

## BACKGROUND

On January 11, 1994, 52 year-old, 345-pound David Tisdel, a truck driver for over 30 years, slipped and fell on ice while attempting to make a delivery to Westchester Industrial Sales following a severe winter storm. He testified that he fell on his left hip while walking through the back parking lot of the building towards the street with Joseph Long, owner and operator of Westchester Industrial Sales (the "Tenant"), and that Mr. Long helped him up. He stated "I said it hurt a lot, but I just kept going." (Tisdel Trans. at 90), and that over the next couple days he felt very sore, "like somebody had hit me with a baseball bat." When he returned home to Michigan after finishing his route, he and his wife tried heating pads and athletic ointments to ease the pain. Although he had been overweight since at least the 6th grade, he testified he had never previously had back problems. He saw his family doctor, Dr. London, for the first time in February. Dr. London prescribed ibuprofin three times a day, but Mr. Tisdel's back pain got worse and he was referred to an orthopedist, Dr. Kenneth Eaton. Dr. Eaton put him or a physical therapy program, and his pain improved until approximately October, when he started to have pain in his hip and numbness of his left foot. In approximately November, he was referred to the Western Michigan Pain Clinic and received two epidural shots, but he testified they did not ease the pain.

Although the pain continually worsened, Mr. Tisdel continued to drive his truck until the first week of December, when he had surgery to remove a herniated portion of his L4–L5 disc that was pinching a nerve. The surgery cured the leg pain and numbness. Tisdel was restricted to his house for two months, and then began a physical therapy program. He returned to his job in May of 1995, but after a few months he began to have "severe back pain" (*id.* at 108), more on the right side and up his back. (*Id.* at 114). He received more epidural shots, but these did not help. He was restricted to no more than 6 hours a day of driving, and he worked the rest of the time at the shop, mostly sitting, but he began to have problems with this work because after a few hours of sitting

or standing he "could barely walk." (*Id.* at 110.) At the end of October of 1995, he went into a rehabilitation program, and in late November he was recommended for treatment in Mary Free Bed's Pain Rehabilitation Program to begin in January of 1996. (*See* Pl. Exh. 4). As of trial, he remained unable to work due to his severe back pain.

At trial, the Owners attempted to place responsibility for clearing the parking lot and walkways on the Tenant. The Tenant countered that the responsibility was the Owners'. Neither defendant attempted to discredit Mr. Tisdel's evidence of the severe back pain he has been suffering. However, both strongly suggested that his injuries were due to his own negligence and a preexisting spine condition. The defendants argued first that because Mr. Tisdel knew the icy condition of the roadways and sidewalks, his decision to leave his truck constituted assumption of the risk or, at minimum, contributory negligence. They also presented the testimony of Drs. Morrissey and Weintraub, who opined that Mr. Tisdel's back problems resulted not from his fall, but from spondylosis and/or spondylolysis, both degenerative back conditions. Dr. Dickoff, plaintiff's own expert, testified that "some features" of spondylosis "would have been there had you x-rayed Mr. Tisdel a few years before the fall, but you can't prove it was preexisting because you didn't." (Dickoff Trans. at 40.) Defendants emphasized that numerous of Mr. Tisdel's medical records from the period after the accident also mention spondylosis. Dr. Dickoff suggested that the condition could have been asymptomatic Mr. Tisdel's entire life, but that his obesity could make the pain worse. All parties stipulated that plaintiff's past medical expenses were $31,361.34.

After a four-day trial, the jury returned a verdict totaling $25,000 in favor of Tisdel. It apportioned the fault between the Owners and the Tenant 100% to the Owners, but also found plaintiff 10% contributorily negligent. The damages were divided as follows:

| | |
|---|---|
| $15,800 | for loss of earnings |
| $700 | for loss of employer 401K contributions |
| $2,000 | for loss of health benefits |
| $6,500 | for medical expenses |
| NONE | for pain and suffering |

The jury awarded Tisdel no damages for any future losses, pain or suffering. He has moved pursuant to Rule 59 to set aside the damages portion of the verdict as "against the weight of the evidence, inconsistent, impermissibly speculative, and/or grossly inadequate." The Owners subsequently cross-moved to set aside the liability portion. We address these motions below.

## DISCUSSION

The Supreme Court has determined that a federal district court sitting in diversity should apply state law standards in deciding a motion challenging the size of a verdict and requesting a new trial on damages. *Gasperini v. Center for Humanities, Inc.,* —— U.S. ——, —— n. 22, 116 S.Ct. 2211, 2224 n. 22, 135 L.Ed.2d 659 (1996) (case involving New York law). In New York, this standard is set by N.Y.C.P.L.R. § 5501(c), which provides that the state's appellate division "shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation." (*emphasis added*). This is also the standard to be applied by New York trial courts. *Gasperini,* —— U.S. at ——, 116 S.Ct. at 2218, (citing, *inter alia, Inya v. Ide Hyundai, Inc.,* 209 A.D.2d 1015, 619 N.Y.S.2d 440 (4th Dep't 1994); *Lightfoot v. Union Carbide Corp.,* 901 F.Supp. 166, 169 (S.D.N.Y.1995) (N.Y.C.P.L.R. § 5501(c)'s "materially deviates" standard "is pretty well established as applicable to [state] trial and appellate courts.")). Thus, federal district courts applying New York law should apply the "deviates materially" standard, rather than the federal courts' more rigorous "shock the conscience" standard to questions of the adequacy of the verdict. *Gasperini,* —— U.S. at ——, n. 22, 116 S.Ct. at 2218, n. 22. This standard was intended to give New York appellate courts greater power to curb excessive and inadequate verdicts, thus providing greater stability in the tort system and greater fairness for similarly situated parties throughout the state. *Id.* at ——, 116 S.Ct. at 2218 (citations omitted).

To determine whether an award "deviates materially from what would be reasonable compensation," New York State

courts look to awards approved in similar cases. *Id.* at ——, 116 S.Ct. at 2218 (citing, *e.g., Leon v. J. & M. Peppe Realty Corp.,* 190 A.D.2d 400, 596 N.Y.S.2d 380, 389 (1st Dep't 1993)). The standard for federal appellate review of a district court's application of the "deviates materially" standard is abuse of discretion. *Id.* at ——, 116 S.Ct. at 2225; *see also Martell v. Boardwalk Enterprises, Inc.,* 748 F.2d 740, 750 (2d Cir.1984) (trial court's refusal to set aside or reduce a jury award will be overturned only for abuse of discretion).

## TISDEL'S MOTION TO SET ASIDE THE DAMAGES VERDICT

■ The jury determined that Mr. Tisdel suffered past economic injury as a result of the Owners' negligence, yet failed to award Mr. Tisdel any damages for either his past pain and suffering or for any future economic loss or pain and suffering. This verdict is both internally inconsistent and inadequate. The jury awarded Mr. Tisdel $15,800 for past lost income, despite the fact that in 1994, the year of his injury, his income was higher than it had been in any year since 1990.[1] This appears to be almost the entire income loss Mr. Tisdel suffered in 1995, after he had continued working for several months following his injury in 1994, then had ceased and undergone a laminectomy in December.[2] If the jury believed defendants' suggestion that Mr. Tisdel had recovered quickly from his fall in January of 1994 and that his December laminectomy and subsequent debilitating pain in 1995 were the result of his spondylosis, we cannot see how it could award Mr. Tisdel any past economic damages, let alone approximately his entire loss of income in 1995. There is no dispute that Mr. Tisdel's lost income resulted from his inability to work because of pain. Thus, for the jury to award damages for his economic loss but not for his past pain and suffering is illogical and inconsistent.

■ In addition, the jury awarded Mr. Tisdel only $6,500 in past medical expenses, even though the parties stipulated that his past medical expenses were $31,361.34, and no evidence was offered at trial to enable the jury to break these expenses down for apportionment. We fail to see how the jury could award Mr. Tisdel almost his entire past income loss, while at the same time award him only a fifth of his undisputed past medical loss. This award of only $6500 in past medical expenses also is inconsistent and inadequate.

■ In addition, the uncontroverted evidence adduced at trial of the severe and debilitating pain Mr. Tisdel suffered demonstrates that the jury's complete failure to award any damages for pain and suffering differed materially from what would be reasonable compensation. After his fall, Mr. Tisdel began to treat himself immediately with pain killers and heating pads and, when the pain did not lessen, he visited a doctor, and over the course of the next two years he saw several more doctors, continued taking medication, undertook physical therapy, received numerous epidural shots, underwent major back surgery, and continues to this day to attempt to lessen his pain. The pain is so great that he is severely limited in his ability to sit, stand, move or lift heavy objects and is thus prevented him from working as a truck driver and has great difficulty even maintaining a desk job.

We believe that the jury's award of no damages for Mr. Tisdel's past pain was inadequate. While some of his pain may be attributable to pre-existing conditions, we do not believe that all of it properly can be so attributed. Mr. Tisdel testified he had no back problems prior to his fall, his doctor

---

1. According to his tax records, Mr. Tisdel's income from his trucking job for the years 1990–1995 is approximately as follows:

| 1990 | $27,910.41 |
|------|-----------|
| 1991 | $29,682.35 |
| 1992 | $30,763.07 |
| 1993 | $34,837.45 |
| 1994 | $35,078.57 |
| 1995 | $14,684.00 |

(*See* Pl. Exhs. 7A–F.)

2. Mr. Tisdel's average income from 1990–1994 was approximately $31,654 per year. In 1995, after having his laminectomy, he made only $14,684. The jury awarded him $15,800 in lost income, close to the approximately $16,970 differential between his average income and his 1995 income.

testified that his spondylosis may have been asymptomatic his entire life, (Dickoff Trans. at 41), and the evidence adduced at trial strongly suggested that this accident triggered his back problems. In several state cases, the court has found that damages should have been awarded to plaintiffs, even where there was evidence of a pre-existing condition. *Cf. Rougeux v. Henriksen,* 195 A.D.2d 742, 600 N.Y.S.2d 170, 171 (3d Dep't 1993) (where teen with congenital anomaly in lumbar region experienced no pain or discomfort until after accident, and defendant admitted accident was precipitating cause of her pain, verdict for defendants properly set aside); *Crocetto v. Alvarez,* 185 A.D.2d 541, 586 N.Y.S.2d 419, 420 (3d Dep't 1992) (where plaintiff had preexisting spondylosis but was unaware of condition prior to the accident and defendant expert admitted accident "certainly aggravated" the condition, decision that accident was not a proximate cause of injuries properly set aside for new trial on all issues).

We also believe the award of no damages for future pain is inadequate because it too differs materially from what would be reasonable compensation. According to his unchallenged testimony, Mr. Tisdel continues to suffer debilitating pain, to undergo treatment, and to be severely limited in his ability to work. We cannot understand how the jury could award lost economic damages which must have been for 1995 and possibly beyond, yet fail to award future damages for loss of income, medical expenses, and pain and suffering. Here again, several state court cases support the conclusion that such a verdict is inadequate. In *Sescila v. Garine,* 225 A.D.2d 684, 639 N.Y.S.2d 830 (2d Dep't 1996), the court granted a new trial to a plaintiff who suffered permanent injuries to her sciatic nerve and left lumbarsacral area in a car accident because it concluded that the jury's decision not to award future damages for pain and suffering was against the great weight of the evidence. Similarly, in *Grasso v. Am. Brass Co.,* 212 A.D.2d 994, 624 N.Y.S.2d 690, 691 (4th Dep't 1995), the Fourth Department found that since the undisputed evidence showed that the plaintiff had suffered at least partial disability as a result of his slip and fall accident and that he

would require future medical treatment and would be unable to perform work requiring heavy lifting, it was error for the jury not to award damages for future economic loss, pain and suffering as well as for the past.

Thus, a new trial on both past and future damages is warranted here in order to enable a jury to render a verdict that is both internally consistent and properly compensates plaintiff for his pain and suffering. Although we believe that on the basis of the evidence adduced at trial, a jury could reasonably have determined that Mr. Tisdel's damages should be reduced because of his pre-existing spondylosis, we do not believe they could reasonably determine that he is entitled to some damages, in particular loss of earnings for the past, yet award no damages for past pain and suffering and no damages for the future.

### THE OWNERS' MOTION TO SET ASIDE THE LIABILITY VERDICT

Although we granted the Owners permission to file a cross-motion to set aside the liability portion of the verdict in April of 1997, plaintiff has since pointed out that we do not have jurisdiction to set aside a verdict and order a new trial where the motion is served more than ten days after the entry of judgment. *See, e.g., Rodick v. City of Schenectady,* 1 F.3d 1341, 1346 (2d Cir.1993) (the time limitations of Rules 50(b) and 59(b) are jurisdictional and cannot be extended regardless of excuse) (citing *Browder v. Director, Dep't of Corrections,* 434 U.S. 257, 261 n. 5, 98 S.Ct. 556, 559 n. 5, 54 L.Ed.2d 521 (1978)). Nor do we have the power to grant permission to enlarge the time to file such a motion, since Rule 6(b) prohibits enlargements of time under Rule 59(b). *Id.* Similarly, we cannot grant a new trial *sua sponte* after the ten day period has run, since rule 6(b) forbids such action. *Lapiczak v. Zaist,* 451 F.2d 79, 80 (2d Cir.1971); *Cavaliere v. Allstate Ins. Co.,* 996 F.2d 1111, 1113 (11th Cir.1993). The outcome would be no different were we to construe the Owners' motion as one for J.M.O.L. under Rule 50(b). *See* FED.R.CIV.P. 6(b); *Rodick,* 1 F.3d at 1346; *Lapiczak,* 451 F.2d at 80.

The fact that Tisdel filed a timely motion to set aside the damages portion of the verdict does not make the Owners' cross-motion timely. While courts have allowed a party to amend or elaborate upon a timely motion, in some cases even to raise new grounds in support of the motion, *U.S. East Telecommunications, Inc. v. U.S. West Information Systems, Inc.*, No. 87 Civ. 2924, 1993 WL 385810, at *4 (S.D.N.Y. Sept.30, 1993) (citing *inter alia, Meriwether v. Coughlin*, 879 F.2d 1037, 1040–42 (2d Cir.1989)), the cases we found all involved an attempt by the *original moving party* to amend its papers. *See also, Pate v. Seaboard R.R., Inc.*, 819 F.2d 1074, 1083–86 (11th Cir.1987); *Roy v. Volkswagenwerk Aktiengesellschaft*, 781 F.2d 670 (9th Cir.1985); *Pogue v. Int'l Indus., Inc.*, 524 F.2d 342, 344 (6th Cir.1975); *Lightwave Tech., Inc. v. Corning Glass Works*, No. 86 Civ. 759, 1991 WL 4737, *8 (S.D.N.Y. January 18, 1991). We decline to extend this rule to allow a party to file a cross-motion seeking to set aside the liability portion of a verdict over four months after the original moving party filed a motion to set aside the damages portion. This decision is consistent with the Fifth Circuit's holding in *Tarlton v. Exxon*, 688 F.2d 973, 977 n. 4 (5th Cir.), *cert. denied*, 463 U.S. 1206, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). There, the Court disallowed a defendant's attempt to join another defendant's previously filed motion for new trial/J.N.O.V./remittitur during oral argument on the motion, warning that a party cannot "belatedly join another litigant's motion and thereby circumvent the jurisdictional requirements of [rule 59(d) ]." *Id.* We do not believe that a cross-motion, which is logically a separate motion brought by the non-moving party, can be considered to have been made at the time the original motion was made. Thus we deny defendant Owners' cross-motion to set aside the liability portion of the verdict as untimely.

## CONCLUSION

Because it was inconsistent and a material deviation from what would be reasonable compensation for the jury to award Tisdel damages for past loss of earnings, 401K contributions, health care premiums and for past medical expenses, but not to award damages for past pain and suffering or any damages for the future, we set aside the damages portion of the verdict and order a new trial on damages only. We deny as untimely defendant Owners' motion to set aside the liability portion of the verdict.

SO ORDERED.