Jackie **DAVIS**, by Next Friend, Edward **DAVIS**, Plaintiff–Appellee,

v.

**JELLICO COMMUNITY HOSPITAL INC.; William Stafford, M.D., Defendants–Appellants.**

No. 89–5718.

United States Court of Appeals, Sixth Circuit.

Argued May 3, 1990.

Decided Aug. 23, 1990.

Fredrich H. Thomforde, Jr. (argued), McCampbell & Young, J.D. Lee, Knoxville, Tenn., for Jackie Davis, by next friend, Edward Davis.

Margaret G. Klein, James H. London, Hogin, London & Montgomery, Knoxville, Tenn., for Jellico Community Hosp., Inc.

James G. O'Kane, Jr. (argued), Poore, Cox, Baker, Ray & Byrne, Knoxville, for William Stafford, M.D.

Before MARTIN and BOGGS, Circuit Judges; and HACKETT, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

The defendants, Jellico Community Hospital and Dr. William Stafford, appeal a jury verdict of $2,500,000 for the plaintiff, Jackie Davis, in this Tennessee diversity

* The Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation.

action for medical malpractice. Specifically, the defendants contend that the district court incorrectly applied Rules 59 and 60 of the Federal Rules of Civil Procedure by upholding the jury verdict in light of Davis's death thirty-three days after the verdict was rendered and after judgment was entered. We affirm.

Jackie Davis, a 24–year–old Kentucky resident, received a head injury in a one-car automobile accident on November 13, 1986. Between November 13, 1986 and November 26, 1986, he complained of headaches and was treated by Dr. William Stafford and Dr. Robert Miller in the emergency room of the Jellico Community Hospital in Jellico, Tennessee. On November 26, 1986, Davis suffered a seizure, became unresponsive, and was again taken to Jellico Community Hospital from which he was transferred to the University of Tennessee Hospital in Knoxville. There, Dr. A.B. Klieforth, a neurosurgeon, determined that Davis was suffering from a subdural hematoma, a collection of blood within his skull. Klieforth performed surgery on Davis on November 27, 1986 to relieve the pressure on Davis's brain. From November 27, 1986 through the conclusion of the trial, Davis remained in a coma in a persistent vegetative state as a result of permanent brain damage.

On April 1, 1987, Davis was moved from the Knoxville hospital and taken to Cardinal Hill Hospital in Lexington, Kentucky where he remained through April 17, 1987. He was then hospitalized at the University of Kentucky Hospital in Lexington for seven days. Thereafter, he was cared for at home by his family.

Davis brought this medical malpractice diversity suit against the defendants, all Tennesseans, in the United States District Court for the Eastern District of Tennessee. Davis sued Dr. Stafford for negligence in his individual capacity as Davis's physician and the Jellico Community Hospital, Inc. in its capacity as the employer of both Dr. Stafford and Dr. Miller, for whose negligence the hospital was alleged to be vicariously liable. Davis maintained that the defendants were liable because a timely diagnosis of a subdural hematoma was not made and that the failure to diagnose that medical condition was the proximate cause of Davis's permanent brain damage.

The case was tried before a jury from December 8, 1988 through December 19, 1988. On December 19, 1988, the jury returned a verdict in the amount of $2,500,-000. The district court entered a final judgment against the defendants on December 19, 1988. Within ten days of the entry of final judgment, the defendants filed a pleading entitled, "Defendants' Motion for Judgment Notwithstanding the Verdict or, in the Alternative, for New Trial or, in the Alternative, for Remittitur." Davis died of cardiac arrest in the Jellico Community Hospital on January 21, 1989, thirty-three days after the verdict. On January 23, 1989, the defendants amended their post-trial motion and sought a new trial on damages because of Davis's death. On April 28, 1989, the district court denied the defendants' various post-trial motions.

In rejecting the defendants' Fed.R.Civ.P. 50(b) motion for a judgment notwithstanding the verdict, the district court held that the evidence supported the verdict and rejected the defendants' claims that Davis's counsel engaged in any misconduct through inflammatory statements or improper use of charts during argument to the jury. As noted, the court had given a limiting instruction to the jury on the use of the chart. The court also declined to grant a new trial because the verdict was not against the weight of the evidence.

As to the chief issue on appeal, the court held that Davis's post-judgment death was not a situation calling for the exercise of Fed.R.Civ.P. 60 or Fed.R.Civ.P. 59 post-trial relief. The district court correctly stated that the standard for considering Rule 59 motions for new trials is a federal standard, not a state standard. *Arms v. State Farm Fire & Casualty Co.*, 731 F.2d 1245, 1248 n. 2 (6th Cir.1984); *see also* Judge Shackelford Miller's opinion in *Still v. Townsend*, 311 F.2d 23, 24 (6th Cir.1962) (holding that Rule 60(b)(2) is controlled by federal, not state, law). Here, the district court also held that the grant of defen-

dants' motion was not warranted because the verdict was not against the weight of the evidence. The district court also denied the defendants' alternative motion for a remittitur. The district court held that under our standard for remittitur, the verdict was not larger than the maximum amount which could reasonably have been found to be compensatory for Davis's loss. *Manning v. Altec*, 488 F.2d 127, 132 (6th Cir. 1973).

The district court also found that the evidence regarding Davis's potential life span was not false—thus no relief under Fed.R.Civ.P. 60 was warranted. The district court noted that at trial, the defendants .failed to rebut the plaintiff's evidence that Davis would have a normal life span. Moreover, the district court instructed the jury that Davis might die sooner than his expected life span. In rejecting the defendants' Rule 59 and Rule 60 arguments, the district court also relied on *Boyd v. Bulala*, 672 F.Supp. 915, 922 (W.D. Va.1987), *aff'd in part, rev'd in part on grounds unrelated to issues in this case, certifying questions to the Supreme Court of Virginia*, 877 F.2d 1191 (4th Cir. 1989), *on certified questions*, 239 Va. 218, 389 S.E.2d 670 (1990), *on remand to Fourth Circuit*, 905 F.2d 764 (4th Cir. 1990), where Judge Michael held that a post-judgment death did not affect a jury verdict under an interpretation of Virginia state tort law *and* federal procedure law despite the defendant's challenge to the verdict under Rules 59 and 60.

■ The main issue on appeal is whether the defendants are entitled to a new trial or relief from a final judgment under Rules 59 or 60 of the Federal Rules of Civil Procedure as a result of Jackie Davis's death while the case was still pending before the district court on post-trial motions, but after the entry of final judgment.

Rule 59 of the Federal Rules of Civil Procedure provides, in pertinent part:

(a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

(e) Motion to Alter or Amend a Judgment. A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

Fed.R.Civ.P. 59(a) and (e).

Rule 60 of the Federal Rules of Civil Procedure provides, in pertinent part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b). Only Rule 60(b)(2) and Rule 60(b)(6) apply to this case.

■ The decision to grant or deny motions for a new trial under Rule 59 or motions under Rule 60(b) is discretionary with the district court. *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir.

1989) (Rule 59 motion for new trial); *Bank of Montreal v. Olafsson,* 648 F.2d 1078, 1079 (6th Cir.), *cert. denied,* 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981) (Rule 60(b) motions). Consequently, we review whether the district court abused its discretion. *Logan,* 865 F.2d at 790; *Olafsson,* 648 F.2d at 1079. "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Logan,* 865 F.2d at 790. The defendants here have not met this burden.

The defendants first argue that the district court committed an error of law by holding that it did not possess the power to reopen the proof in this action on the issue of damages. This argument is wholly meritless. Nowhere in the district court's opinion is there even an intimation that the court lacked the power to reopen the proof. Had the district court concluded that it lacked the power to reopen the proof, it surely would not have engaged in its detailed reasoning as to why the post-trial relief provided by Rules 59 and 60(b) was not warranted in this case. Significantly, the defendants do not cite any language in the district court's opinion or in a transcript of the oral proceedings that lends credence to their assertion. The district court held only that this case and these circumstances did not present an adequate situation for triggering the remedies provided in Rules 59 and 60(b).

The defendants contend that as a matter of law "substantial justice" requires the reopening of the damages issue in this case in view of Davis's death following so closely after the jury's verdict. In support of this contention, the defendants note that we have recognized that both the trial court and the court of appeals may consider facts occurring after a verdict is rendered by the jury when it works a "substantial injustice" on a party not to do so. "This Court is obligated to take notice of changes in facts or law occurring during the pendency of a case on appeal which would make a lower court's decision, though perhaps correct at the time of its entry, operate to deny litigants of substantial justice." *Hawkes v. Internal Revenue Service,* 467 F.2d 787, 793 (6th Cir.1972). "The governing principle in the Court's acting on a motion for new trial is whether, in the judgment of the trial judge, such course is required in order to prevent an injustice; and where an injustice will otherwise result, the trial judge has the duty as well as the power to order a new trial." *Kilgore v. Greyhound Corp.,* 30 F.R.D. 385, 387 (E.D.Tenn.1962).

While the broad principles cited by the defendants give courts the opportunity to considering supervening facts and order new trials to prevent substantial injustice, this case is not one deserving of a new trial under those principles. In *Hawkes,* the court considered the plight of a criminal defendant in an income tax fraud case. Attempting to mount a defense to the charges against him, Hawkes requested, under federal criminal discovery rules, copies of certain documents from the Internal Revenue Service. The Service complied only partially with this request, and Hawkes instituted a civil suit under the Freedom of Information Act to obtain the withheld documents. That suit was dismissed by the district court on several grounds, including the fact that other avenues of obtaining the requested information were available through criminal discovery. Hawkes then entered a plea of nolo contendere and was sentenced to prison. However, Hawkes appealed the dismissal of his civil Freedom of Information Act suit. On appeal, this court noted that the reason for the dismissal of the civil suit, availability of criminal discovery, was not denied to Hawkes because of his plea. This, the court held, was a fact following the dismissal of the civil suit, which made that dismissal unjust because Hawkes's asserted alternative remedies were foreclosed. *Hawkes,* 467 F.2d at 793. Thus, the situation leading to the apparently expansive language in *Hawkes* cited by the defendant is of dubious precedential value here.

Indeed, the cases relied upon by the panel in *Hawkes* largely addressed injunctive relief scenarios, not attempts to revise jury verdicts in light of subsequent events. For

example, in *McLeod v. General Electric Co.*, 385 U.S. 533, 87 S.Ct. 637, 17 L.Ed.2d 588 (1967) (per curiam), the Court invoked the rule recognized in *Hawkes* to remand a case involving a temporary restraining order requiring a company to refrain from failing to bargain with a union in good faith. The district court was ordered, upon remand, to reconsider its injunction in light of the company's assent to a collective bargaining agreement with the union. Thus, to remove the "substantial injustice" of an injunction when the very need for injunctive relief was removed, the Court considered supervening facts occurring after the district court's injunction was issued. *See also Brownall v. Kaufman*, 251 F.2d 374 (D.C.Cir.1957) (per curiam) (cited in *Hawkes*) (continuing injunction but withholding decision on underlying merits leading to injunction because of supervening events, *i.e.*, the Supreme Court's grant of certiorari on the underlying merits).

In *Michigan Surety Co. v. Service Machinery Corp.*, 277 F.2d 531 (5th Cir.1960) (cited in *Hawkes*), a state trial court's decision that a writ of attachment was improper led to a suit in federal court by the debtor against the creditor's surety on the writ. The debtor won the federal suit but subsequently a state appellate court reversed the state trial court's determination that the attachment was improper. Consequently, the supervening event erased the underlying injury which was the subject of the federal suit. The Fifth Circuit held that it would be unjust to allow the verdict for the debtor to stand because that judgment as erroneous even though it was proper when it was enforced. While *Michigan Surety Co.* involved the reversal of a damages verdict, as urged by the defendants here, that case involved an erroneous judgment in that no cognizable injury had even occurred. Here, the injury to Davis was very real. Davis's death did not erase his injury. In *Michigan Surety Co.*, there was in fact no injury whatsoever.

As for defendants' reliance upon the district court opinion in *Kilgore*, that case involved a juror's independent investigation of the site of a tort and his recounting the results of his investigation to his fellow jurors during their deliberation. The district court held that the actions of the juror did not create an injustice. Consequently, while the defendants cite *Hawkes* and *Kilgore* as establishing that courts will prevent injustice upon learning of supervening facts, the case at bar is a far cry from any of the situations where courts have utilized that power.

■ The alleged "substantial injustice" in this case derives from the defendants' claim that expert testimony regarding Davis's life span was "false." In *Gordon v. United States*, 178 F.2d 896 (6th Cir. 1949), *cert. denied*, 339 U.S. 935, 70 S.Ct. 664, 94 L.Ed. 1353 (1950), this circuit set out the standard for granting a new trial when it is discovered after trial that false evidence was presented at trial. That standard states:

> A new trial should be granted where the court is reasonably well satisfied that the testimony given by a material witness is false; that, without it, a jury might have reached a different conclusion; that the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after trial.

*Id.* at 900. *Gordon* dealt with a witness who recanted following Gordon's conviction for various criminal offenses. The court affirmed the district court's skepticism regarding the recanting witness's veracity. According to the defendants, the standard announced in *Gordon* should apply to situations where the testimony is conclusively established to be false by physical events occurring after trial because the standard is designed to prevent a litigant from suffering an injustice due to testimony introduced at trial which subsequently is determined to be false.

We are unimpressed by this nearly frivolous argument. First, we note that motions for new trials under Rule 59 generally must be filed within ten days of a final judgment. Fed.R.Civ.P. 59(e). This circuit has held that the district court may exercise its discretion to hear amended motions under Rule 59 even if not tendered within

the ten-day period where the original Rule 59 motion was made, as here, within the ten-day period specified in Fed.R.Civ.P. 59(e). *Pogue v. International Industries, Inc.*, 524 F.2d 342, 344 (6th Cir.1975). By reaching the merits of defendants' amended Rule 59 motion, presumably, the district court was acting within the discretion recognized in *Pogue.*

Defendants urge that we find the district court's denial of the Rule 59 motion prejudicial legal error and that we remand the case for retrial on the damages issue. They make this assertion on the same grounds they alleged for Rule 60(b) relief, *i.e.,* that the need to secure "substantial justice" and fairness in this case—allegedly deprived by the "false" testimony regarding Davis's anticipated life span—outweighs the interest in the finality of judgments. Consequently, relief under Rule 59 or 60 is dependent on our determination that substantial injustice is present in this case.

We reject defendants' contention that relief is available under Rule 60(b)(2). By its terms, Rule 60(b)(2) applies only to "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed.R.Civ.P. 60(b)(2). The district court agreed with Judge Michael's conclusion in *Boyd v. Bulala* that "[u]nder Rules 59 and 60(b)(2) newly discovered evidence must pertain to facts which existed *at the time of trial.*" 672 F.Supp. 915, 922 (W.D.Va. 1987) (emphasis in original); *see also NLRB v. Jacob E. Decker & Sons*, 569 F.2d 357, 364 (5th Cir.1978); *Strobl v. New York Mercantile Exchange*, 590 F.Supp. 875, 878 (S.D.N.Y.1984), *aff'd*, 768 F.2d 22 (2d Cir.), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985). In *Boyd v. Bulala*, the defendant, a physician, made the same arguments advanced by the defendants in this case. In *Boyd v. Bulala*, the plaintiff died six weeks after the jury verdict was returned. In *Boyd v. Bulala*, final judgment was not entered until after the resolution of post-trial motions. Nevertheless, the court concluded that the defendant could not "open the record to present evidence concerning an event which occurred six weeks after the verdict, nor can [the plaintiff's] death serve as the basis for a new trial." 672 F.Supp. at 922. As stated by the court in *Boyd v. Bulala*, "[w]ere the rule otherwise, litigation would never end." *Id.*

We are persuaded by Judge Michael's analysis of this issue. To hold that a plaintiff's death following a jury verdict is the sort of "substantial injustice" requiring the reopening of cases or award of new trials under the Federal Rules of Civil Procedure would be to invite a morass of appeals from defendants in cases where the plaintiffs did not survive an "acceptable" amount of time following the entry of final judgment. Conversely, such a rule would require reopening cases where a plaintiff's life span exceeded the expectation presented to the jury. In fact, the case before us is less troubling than the situation in *Boyd v. Bulala.* There, the plaintiff died after the jury verdict returned but before entry of final judgment pending the resolution of the defendant's post-trial motions. The court declined to exercise its discretion to reopen the trial and that decision was affirmed by the Fourth Circuit. *See Boyd v. Bulala*, 905 F.2d 764 (4th Cir.1990); *Boyd*, 877 F.2d 1191 (4th Cir.1989). Here, the merits against considering Davis's post-verdict death are more compelling because a final judgment had been entered prior to his death.

Moreover, we wonder what standard the defendants would have us create. Is a year too short or too long a time to require a plaintiff's post-judgment survival? Six months? Three months? Would verdicts in exposure cases be reopened because of newly-developed cures for asbestosis or DES-related maladies? Any judicial rule establishing contingencies on the enjoyment of damage awards would necessarily be arbitrary. While several state legislatures have established structured damage awards with built-in contingencies for deaths well before a plaintiff's expected life span, *e.g.,* Fla.Stat.Ann. § 768.51 (Harrison 1984); Cal.Civ.Proc.Code § 667.7 (West 1980); Wis.Stat.Ann. § 655.015 (West 1980), Tennessee law does not pro-

vide such a statute. Moreover, we must apply federal law to this question of federal procedure. *See Arms v. State Farm Fire & Casualty Co.*, 731 F.2d at 1248 n. 2; *Still*, 311 F.2d at 24. The opportunity for "perfect justice" based on 20/20 hindsight is not worth the strain on the judicial system resulting from potentially incessant scrutiny of damage awards.

Rules 59 and 60(b)(2) are not designed to allow losing litigants to amend damage awards based on a successful litigant's death after a final judgment is entered in a case. The defendants in this and every other tort case well know that a plaintiff may not survive to fully enjoy an award of damages. It is the defendant's responsibility to make clear to the fact finder that the plaintiff could die as soon as he or she leaves the courthouse. Here, the defendants failed to challenge testimony regarding Davis's expected life span. Moreover, the district court reminded the jury that Davis might die before he reached his expected life span. The fact that a plaintiff dies even a second after judgment is entered does not render evidence regarding an *expected* life span "false" nor the judgment invalid. The testimony regards an expectancy, not a certainty. Had Davis lived well beyond his expected life span, Rules 59 and 60 would not have allowed him to move for a supplemental award of damages.

The court in *Boyd v. Bulala* recognized the well-conceived rule that newly discovered evidence for motions under Rule 59 or Rule 60(b)(2) must pertain to evidence which existed at the time of trial. That rationale applies equally to cases such as this one where final judgment has been entered. Moreover, Judge Michael's approach to this issue is consistent with decisions in this circuit and at least one other circuit. In *Still v. Townsend*, we upheld the district court's denial of Rule 60(b)(2) relief where a successful plaintiff sought to increase her damages by claiming that newly discovered evidence established that her injuries were more severe than demonstrated at trial. 311 F.2d 23, 23–24 (6th Cir.1962). Likewise, the Second Circuit, in *Campbell v. American Foreign S.S.*

*Corp.*, 116 F.2d 926, 928 (2d Cir.), *cert. denied*, 313 U.S. 573, 61 S.Ct. 959, 85 L.Ed. 1530 (1941), held that the district court did not abuse its discretion in denying the defendant's motion for a new trial under Rule 59 because of an apparent improvement in plaintiff's condition. The Second Circuit stated:

> The facts alleged in support of the motion do not constitute "newly discovered evidence" within the rule. That phrase refers to evidence of facts in existence at the time of the trial, of which the aggrieved party was excusably ignorant. If it were ground for a new trial that facts occurring subsequent to the trial have shown that the expert witnesses made an inaccurate prophecy of the prospective disability of the plaintiff, the litigation would never come to an end. The weight of authority is against the granting of a new trial on the ground of unexpected improvement in the plaintiff's condition, unless the evidence is sufficient to show fraud.

*Id.* No showing of fraud has been made in this case. Here, evidence of Davis's death occurred after final judgment. Consequently, we reject defendants' arguments under Rules 59 and 60(b)(2). The district court did not abuse its discretion in refusing to reopen the final judgment because of Davis's death a month after the judgment was entered.

■ Turning to Rule 60(b)(6), relief under that provision is available only in cases of "extraordinary circumstances." *Ackermann v. United States*, 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950); *Steinhoff v. Harris*, 698 F.2d 270, 276 (6th Cir.1983). Death of a judgment plaintiff following so shortly after a jury award of damages based on an expected life span not realized is rare, but it is not the sort of "extraordinary circumstance" contemplated by Rule 60(b)(6). *See Boyd v. Bulala*, 905 F.2d 764 (4th Cir.1990).

■ The defendants next argue that under *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the case should be reopened as to damages pursu-

ant to Rule 14 of the Tennessee Rules of Appellate Procedure. That is not the issue before us. The Tennessee Appellate Rules have no bearing in a federal appeal. Nowhere does an appellate rule create a substantive right. Federal courts are to apply state procedural rules in diversity cases only when the federal rules of procedure do not address the situation presented. *Hanna v. Plumer*, 380 U.S. 460, 470, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965).

The issues in this case involve the application of federal Rules 59 and 60(b). The fact that the defendants are not entitled to relief pursuant to those rules does not mean that there is not a federal rule which addresses their situation. Moreover, if this court were to look at the Tennessee rules, it would not examine the proffered Tennessee Rules of Appellate Procedure; rather, this court would look at the Tennessee trial rules providing for post judgment relief— Tennessee Civil Procedure Rule 60, which is identical to Rule 60 of the Federal Rules of Civil Procedure, or Tennessee Civil Procedure Rule 59, which provides essentially the same relief as Fed.R.Civ.P. 59. Because the relevant procedural rules are identical or functionally equivalent, the outcome of the case will not be affected. Consequently, the rationale behind *Hanna v. Plumer* does not apply because in *Hanna,* the Court was concerned about situations where a difference in rules would affect the results of the litigation.

■ Finally, the defendants claim that the district court committed an error of law by allowing Davis's beneficiaries to recover damages for future medical expenses when such damages are not recoverable under Tennessee's wrongful death statute, Tenn. Code Ann. § 20–5–113. The defendants claim that the district court's reliance on *Boyd v. Bulala,* 647 F.Supp. 781 (W.D.Va. 1986), was erroneous. In *Boyd v. Bulala,* the court held that a plaintiff's personal injury claim did not "convert" into an action for wrongful death when the plaintiff died after a verdict was rendered. Because the Tennessee statutory language differs from the Virginia statutory language under consideration in *Boyd v. Bulala,* the

defendants claim that the district court's reliance on *Boyd v. Bulala* was improper. Defendants argue that under Tennessee law, a plaintiff's action for personal injuries converts into a wrongful death action in the event the plaintiff dies at any time during the pendency of his claim. As a consequence, the district court erred by allowing Davis's beneficiaries to recover future medical expenses when such damages are not allowed under Tennessee's wrongful death statute. Tenn.Code Ann. § 20–5–113.

There is no language in Tennessee state statutes or case law which establishes the conversion theory urged by the defendants. The Tennessee cases cited in defendants' briefs and at oral argument concern the revival or tort actions by a plaintiff's personal representatives following a plaintiff's death. Although *Boyd v. Bulala* does not address issues of Tennessee law, Judge Michael's reasoning in that case commends itself to addressing the defendants' theory. Tenn.Code Ann. § 20–5–113 does not allow wrongful death action plaintiffs to recover future medical expenses. However, this case was not a suit for wrongful death. While Tennessee's requirements for a wrongful death action apply when the plaintiff's death occurs before a final verdict, the language of Tenn.Code Ann. § 20–5–113 does not in any way lead to the conclusion that a plaintiff's post-judgment death converts a personal injury action into a wrongful death action. We again note that the district court's entry of final judgment *before* Davis's death makes this a less compelling case for a "conversion" theory than the situation in *Boyd v. Bulala,* which nevertheless rejected that theory despite the lack of a final judgment at the time of the plaintiff's death.

We therefore affirm the judgment of the district court.