Michael WILLIAMS, and Maudie
Williams, Plaintiffs,

v.

UNITED DAIRY FARMERS,
et al., Defendants.

Nos. C2:96 CV 00802, C2:96 CV 01060.

United States District Court,
S.D. Ohio,
Eastern Division.

Sept. 20, 1999.

Reginald Cooke, Cooke & Associates, Renny Joe Tyson, Renny J. Tyson Co., LPA, Columbus, OH, F. Benjamin Riek, III, Riek & Associates, Cleveland, OH, for plaintiffs.

Larry James, Crabbe, Brown, Jones, Potts & Schmidt, Columbus, OH, Jerry Sallee, Dinsmore & Shohl, Cincinnati, OH, for defendants.

*OPINION AND ORDER*

MARBLEY, Judge.

## I. INTRODUCTION

This matter is before the Court on Plaintiffs Michael Williams and Maudie Williams' (collectively "Plaintiffs") **Motion For New Trial** pursuant to FED.R.CIV.P. 59(a) and **Motion For Relief From Judgment** pursuant to FED.R.CIV.P. 60(b)(2). This case was tried to a jury from September 21, 1998, to October 1, 1998. On October 5, 1998, the jury returned a verdict in favor of Defendant United Dairy Farmers, Inc. ("UDF"). Plaintiffs timely filed the instant motions seeking a new trial. Disposition of the motions before the Court turn on whether relevant newly discovered evidence—evidence that Patricia Munyan conspired with Warren Freeman to fabricate testimony for profit—which was not available to the parties or the Court prior to the end of trial, might have, if discovered earlier, changed the jury's verdict. Based on this newly discovered evidence, the Court is reasonably satisfied that the testimony given by Ms. Munyan, a material witness at trial, was false and might have improperly influenced the outcome of this case. Therefore, for the reasons set forth below, Plaintiffs' Motion for Relief from Judgment is **DENIED,** and Plaintiffs' Motion for New Trial is **GRANTED.**

## II. FACTS

Plaintiffs Maudie and Michael Williams, mother and son, respectively, were employed by Defendant United Dairy Farmers, Inc. ("UDF") at its store located on 1531 Frebis Avenue, Columbus, Ohio ("Store 611"). Maudie began working at Store 611 on March 15, 1994, while Michael began on May 25, 1994. Plaintiffs were both discharged in 1995 for violating UDF's cash handling policy. On August 13, 1996, Plaintiffs brought this race discrimination action asserting claims under Title VII and 42 U.S.C. § 1981, arising out of their employment at UDF and their subsequent termination. In their Complaint, Plaintiffs alleged that Defendants Glenn Broersma and Bill Bales, District Supervisors for UDF, created a working environment that was hostile to African-American employees.

On September 4, 1996, in deposition testimony before the Ohio Civil Rights Commission, Munyan testified that Glen Broersma and Bill Bales frequently made racially derogatory statements in reference to African-American employees and customers. For example, Munyan testified that Broersma instructed UDF manager Debbie Ferguson: "Don't hire any more fucking niggers." In addition, Munyan testified that Broersma instructed Ferguson to "ride [Maudie Williams] and write her up for anything that she could to get her out of there." Munyan also testified that Bales told her that he did not want any more niggers hired and that he called Maudie Williams a "black bitch." Moreover, Munyan, in deposition testimony before this Court stated that Bales would often watch the video surveillance cameras at UDF when African-American employees and customers were in the store because he believed that "all Black people steal."

Prior to trial, in June 1998, the Williams' attorney, Reginald Cooke received a telephone call from Gene Walker, who was incarcerated at the Franklin County jail on a probation violation. Walker and his girlfriend, Sharon Tigner, had previously lived with Patricia Munyan and Warren Freeman Jr. at Freeman's parents home in 1998. During this telephone conversation, Walker informed Cooke that he had knowledge of information relating to the UDF case and that he would provide Cooke with the information if Cooke would serve as his attorney and secure his release from jail. Cooke did not pursue Walker's information at that time because he believed the call was one of many prank calls from individuals with no valid information concerning the case or from an individual seeking to be paid for purportedly helpful information.

As trial approached, Plaintiffs filed numerous motions *in limine,* one seeking to exclude all references to a videotape ("the

Munyan Videotape"), in which Munyan, apparently being taped by a hidden camera, appears to recant her prior deposition testimony given to the Ohio Civil Rights Commission. The Munyan Videotape was recorded by Warren Freeman Jr., Munyan's boyfriend, in March of 1998, while the two of them were lying in bed. In the videotape, Munyan divulged that her deposition testimony in this case as well as her testimony to the Ohio Civil Rights Commission, which supported Plaintiffs' race discrimination claims, were fabricated in an effort to obtain a portion of any monetary award that the Plaintiffs might receive as a result of their litigation. Specifically, Munyan stated that she had lied in her previous deposition testimony and that the Plaintiffs' discrimination case was merely a scam to obtain money—money that the Plaintiffs would split with Munyan. At one point in the videotape Munyan artfully stated: "They was saying that a supervisor—some supervisors at work where I work on Frebis were discriminating. And they [the supervisors] weren't really, you know ... So really I guess I got to go, but just get up there and lie like I've been lying ... I thought I was doing the right thing and I thought a little lie wouldn't hurt. I didn't know it was going to be all this."

In short, on the Munyan Videotape, Munyan maintained that she participated in the scam because she wanted money and because she was angry with Bales and UDF for denying her request for a leave of absence and she wanted "to get even with that son-of-a-bitch [Bales]." Freeman then negotiated with and sold the Munyan Videotape to UDF. Freeman received $10,000, in two payments, from UDF for the Munyan Videotape. On April 6, 1998 he received $7,500 and the $2,500 balance after the conclusion of trial. The Defendants insist that the $10,000 payment by UDF was for the videotape and not to buy evidence.

Plaintiffs' Motion *In Limine* was based on three evidentiary concerns: opportunity to explain (Fed.R.Evid. 613), authentication (Fed.R.Evid. 901) and prejudice (Fed.R.Evid. 403). The motion was granted in part, and denied in part. This Court's Order noted, "Munyan's statements on the tape are probative of central issues in this case: whether UDF engaged in discriminatory employment practices, and whether racial animus motivated the alleged actions of Defendants Bales and Broersma." *Williams v. United Dairy Farmers, et al.,* No. 96–802 (S.D.Ohio Sept. 21, 1998) (order granting in part and denying in part Plaintiffs' Motion in Limine to Exclude Defendants' Exhibits 50.1 and 50.2). The Court, therefore, permitted Defendants to offer the Munyan Videotape into evidence, with the exception of statements made therein relating to attorney Reginald Cooke.

This case was tried to a jury on September 21, 1998, through October 1, 1998. During the trial, Defendants tendered evidence to the jury relating to the Munyan Videotape to show that Patricia Munyan, and in fact the entire case, was not credible and merely a ploy to make money. Although the videotape appeared engineered and contrived, its impact was substantial. It is more likely than not that the Munyan Videotape played a crucial role in the outcome of the trial. At the close of evidence, the jury returned a verdict in favor of Defendants and judgment was entered on October 5, 1998. On October 15, 1998, Plaintiffs timely filed a Motion for New Trial pursuant to Fed.R.Civ.P. 59(a), seeking to vacate the jury's verdict as being against the manifest weight of the evidence. This Motion is currently pending before the Court and shall be addressed herein.

In November of 1998, Janie Munyan, Patricia Munyan's daughter, informed Cooke that Gene Walker knew something about the Munyan Videotape. Cooke met with Walker and confirmed that Walker and Sharon Tigner did in fact have information concerning the Munyan Videotape. On December 1, 1998, Plaintiffs filed a Motion for Relief from Judgment based on newly discovered evidence (the Walker and Tigner information regarding the Munyan Videotape) pursuant to Fed.R.Civ.P. 60(b)(2). On February 17, 1999, the Court held an evidentiary hearing concerning the newly discovered evidence. At the hearing, Walker and Tigner testified that Patricia Munyan and Warren Freeman Jr. told them, while Munyan and Freeman lived at the Freeman residence in 1998, that Munyan and Freeman had secured a cam-

corder and collaborated in making the Munyan Videotape in order to make money. Thus, according to Walker and Tigner's testimony, Patricia Munyan, contrary to her previous deposition testimony heard by the jury, knew of and participated in the making of the Munyan Videotape. This testimony directly contradicted the deposition testimony previously given by Patricia Munyan in this case.

### III. PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT

Pursuant to FED.R.CIV.P. 60(b)(2), a court may relieve a party from a final judgment if there is "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." FED.R.CIV.P. 60(b)(2). To be considered newly discovered evidence under Rule 60(b)(2), the evidence must have been in existence, or pertain to facts that existed, at the time of trial. *See Davis v. Jellico Community Hosp., Inc.*, 912 F.2d 129, 135 (6th Cir.1990). The treatment of Rule 60(b) motions is committed to the sound discretion of the district court. *See Amernational Industries, Inc. v. Action–Tungsram, Inc.*, 925 F.2d 970, 975 (6th Cir.1991).

In *Good v. Ohio Edison Co.*, 149 F.3d 413 (6th Cir.1998), the Sixth Circuit explained that "to prevail on a Rule 60(b)(2) motion, a movant must demonstrate: (1) that it exercised due diligence in obtaining the information and (2) [that] the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment." *Id.* at 423 (*quoting New Hampshire Ins. Co. v. Martech U.S.A., Inc.*, 993 F.2d 1195, 1200–01 (5th Cir.1993)). In order to succeed on a Rule 60(b)(2) motion the newly discovered evidence must be admissible. *See Wilson v. Upjohn Co.*, 808 F.Supp. 1321, 1323 (S.D.Ohio 1992). A motion for relief from judgment cannot be granted based on inadmissible statements or statements that merely call into question the declarant's credibility. *See id. See also Good*, 149 F.3d at 423. Accordingly, the newly discovered evidence cannot be merely impeaching or cumulative. *See id.* (*citing Yachts Am., Inc. v. United States*, 779 F.2d 656, 662 (Fed.Cir.1985)). Therefore, as a threshold consideration, to support a Rule 60(b)(2) motion, Walker and Tigner's testimony must be admissible as substantive evidence, not merely for impeachment purposes.

Evidence is relevant if it has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* FED. R.EVID. 401. Relevant evidence is admissible, *see* FED.R.EVID. 402, unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* FED. R.EVID. 403. Hearsay, however, generally does not qualify as admissible evidence. *See* FED.R.EVID. 802. There are narrowly tailored exceptions to the general rule excluding hearsay evidence, *see e.g.*, FED.R.EVID. 803 and 804, as well as statements that appear to be hearsay, but because of sufficient indicia of reliability, are not considered hearsay. *See* FED.R.EVID. 801(d).

Under Rule 804, there are five exceptions to the hearsay rule; however, to utilize Rule 804 the declarant must be unavailable. A declarant is unavailable when he testifies, *inter alia*, to a lack of memory of the subject matter of the declarant's statement or is absent and the proponent of the statement has been unable to procure the declarant's attendance by process. *See* FED. R.EVID. 804(a)(3) and (5). Under Rule 804, the proponent of the hearsay statement bears the burden of showing that the declarant is unavailable. *See Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (stating that the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant); *Kirk v. Raymark Industries, Inc.*, 61 F.3d 147, 165 (3d Cir.1995) ("We observe that it is the proponent of the statement offered under Rule 804 who bears the burden of proving the unavailability of the declarant."); 2 John William Strong, *et al.*, McCormick on Evidence § 253, at 134 (4th ed. 1992) ("The proponent of the hearsay statement must ... show that the witness cannot be found.").

The determination of unavailability is a matter for the Court to decide. *See* FED.R.EVID. 104(a). Where it is alleged that the declarant is unavailable pursuant to Rule 804(a)(3) due to a lack of memory of the subject matter of his statement, the proponent must establish that the declarant has a lack of memory of the subject matter of the declarant's statement, not merely a lack of memory concerning ancillary or related issues. *See* FED.R.EVID. 804(a)(3). Thus, lack of memory must be established by the testimony of the witness himself. *See* FED.R.EVID. 804(a)(3) Advisory Committee Notes.

Where it is alleged that the declarant is unavailable pursuant to Rule 804(a)(5) because he is absent from the hearing in which the hearsay testimony is offered, the proponent of the statement must demonstrate that: (1) the declarant is "absent from the hearing and (2) the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means." *See* FED.R.EVID. 804(a)(5). Thus, the mere absence of the declarant from the hearing, alone, does not establish unavailability. *See* FED.R.EVID. 804(a)(5) Advisory Committee Notes. The proponent must also establish that reasonable efforts were undertaken to secure the declarant's attendance at the hearing. *See id.* Reasonable efforts include service of a subpoena on the declarant to testify at the hearing, attempts to depose the declarant, or some other showing of a good faith effort to secure the declarant's attendance, such as witnesses explaining why the declarant is unavailable to testify. *See* FED.R.EVID. 804(a)(5) Advisory Committee Notes (rule designed primarily to require that an attempt be made to depose a witness, as well as to seek his attendance, as a precondition to the witness being deemed unavailable); *Simulnet East Ass. v. Ramada Hotel Operating Co.*, Nos. 95–16339, 95–16340, 1997 WL 429153 * 6 (9th Cir. July 31, 1997) ("Where no attempt has been made to depose a witness, that witness cannot be said to be unavailable."). *See, e.g., Allen v. Morris*, 845 F.2d 610, 613 (6th Cir.1988) (OHIO R.EVID., which in all material respects has adopted FED.R.EVID., requires counsel to serve subpoena to satisfy unavailability burden).

In this case, Plaintiffs argue that Walker and Tigner's testimony is admissible pursuant to Rule 804(b)(3), the "statement against interest" exception to the hearsay rule. Evidentiary rulings on the admission of evidence under Rule 804 are left to the discretion of the trial court after considering all the surrounding circumstances. *See United States v. Price*, 134 F.3d 340, 347–48 (6th Cir.1998). Under Rule 804(b)(3), a hearsay statement is not excluded from evidence, if at the time of its making, the statement tends to subject the declarant to civil or proprietary liability, such that a reasonable person would not have made the statement unless he believed the statement to be true. *See* FED.R.EVID. 804(b)(3). A statement against interests has circumstantial guarantees of reliability because "[i]t is against self-interest to admit one's own criminal liability, arrogance, or lack of integrity, and so all the more easy to credit when it happens." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 512, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). This principle underlies the elemental rule of evidence that permits the introduction of statements against interest, despite their hearsay character, because we assume "that persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true." *Id.* (*citing* Advisory Committee's Notes on FED.R.EVID. 804(b)(3)).[1] In order for Walker and Tigner's testimony to be admissible under Rule 804(b)(3), Plaintiffs must also establish that Freeman and Munyan were unavailable to testify at the February 17, 1999 evidentiary hearing.

Here, neither Freeman nor Munyan was "unavailable," as defined by Rule 804(a), when Plaintiffs offered the newly discovered evidence into evidence on February 17, 1999.

1. The decisive question under Rule 804(b)(3) is whether the declarant's statement was sufficiently against the declarant's civil or penal interest "that a reasonable person in the declarant's position would not have made the statement unless believing it to be true," and this question can only be answered in light of all the surrounding circumstances. *See Williamson v. United States*, 512 U.S. 594, 604, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994).

Freeman was incarcerated in Franklin County and had recently provided deposition testimony regarding the alleged statement at issue in this motion. Plaintiffs maintain that Freeman testified to a lack of memory concerning the statement and thus was rendered unavailable pursuant to Rule 804(a)(3). A review of Freeman's deposition testimony, however, does not indicate that he testified to a lack of memory of the statement at issue. In fact, when asked directly whether he or Patricia Munyan made the alleged statements to Walker and Tigner concerning the Munyan Videotape, Freeman unequivocally denied making such statements. A denial does not constitute a lack of memory pursuant to Rule 804(a)(3).

Further, although it is undisputed that Munyan was absent from the evidentiary hearing on February 17, 1999, there is no evidence in the record that Plaintiffs made reasonable efforts to procure her attendance as required for unavailability under Rule 804(a)(5). Plaintiffs contend that because Munyan was unavailable during the trial in the fall of 1998, the Court should also deem her unavailable nearly five months later, without a showing of unavailability, in February 1999. This argument lacks merit. Under Rule 804(a)(5), the proponent must establish unavailability at the time of the hearing when the hearsay statement is offered. *See Roberts,* 448 U.S. at 65, 100 S.Ct. 2531; *Kirk,* 61 F.3d at 165. The Court is not willing to adopt a "once unavailable, always unavailable" approach under Rule 804(a)(5). Had Plaintiffs' counsel merely made a showing of a good faith effort to secure Munyan's attendance at the hearing, whether successful or not, the Court could have found that reasonable efforts were employed to establish unavailability. Absent a showing of reasonable efforts by Plaintiffs to secure Munyan's attendance at the hearing, the Court cannot find Munyan was unavailable pursuant to Rule 804(a)(5). Thus, neither Freeman nor Munyan were unavailable, as defined by Rule 804(a), when the newly discovered evidence was offered into evidence on February 17, 1999. Accordingly, Walker and Tigner's statements are not admissible under 804(b)(3).

In the alternative, Plaintiffs argued that Walker and Tigner's testimony is not hearsay and is admissible as evidence of a prior inconsistent statement pursuant to Rule 801(d)(1)(A). Under Rule 801(d)(1)(A), a statement is not hearsay if (1) the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, (2) the statement is inconsistent with the declarant's testimony, and (3) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition. Thus, a prior inconsistent statement, under Rule 801(d)(1)(A), is a statement that was made under oath in a previous proceeding that conflicts with the testimony given by the declarant in the proceeding at hand. *See* FED.R.EVID. 801(d)(1)(A). As it is not hearsay, a prior inconsistent statement offered into evidence pursuant to Rule 801(d)(1)(A) is admissible as substantive evidence, *i.e.,* for the truth of the matter asserted.

In this case, the alleged statements of Freeman and Munyan were conveyed at the kitchen table of the Freeman home; and thus, because the statements were not made in a previous trial or hearing subject to the penalty of perjury, they do not qualify as non-hearsay under Rule 801(d)(1)(A). It is clear by the language of Rule 801(d)(1)(A) a statement is not hearsay as a prior inconsistent statement only where the statement was made under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition. *See* FED.R.EVID. 801(d)(1)(A). The facts of this case do not support such a finding. Therefore, Rule 801(d)(1)(A) is not applicable in this case.

Under Rule 613, however, a prior inconsistent statement by a witness that was not made during a previous proceeding under the penalty of perjury, is admissible to impeach the credibility of the declarant. *See* FED.R.EVID. 613(b). Rule 613(b) provides:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

This provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2).

It is axiomatic that a statement may not be used pursuant to Rule 613(b) unless it is in fact inconsistent with the witness's statements made at trial. *See United States v. Hale,* 422 U.S. 171, 176, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). Proof of a prior inconsistent statement may be elicited by extrinsic evidence only if the witness on cross-examination denies having made the statement. *See United States v. Davis,* 1994 WL 362061 *3 (6th Cir. July 12, 1994); *see also BankAtlantic v. Blythe Eastman Paine Webber, Inc.,* 955 F.2d 1467, 1476 (11th Cir.1992); *United States v. Soundingsides,* 820 F.2d 1232, 1241 (10th Cir.1987).

In this case, during his deposition, Freeman was afforded the opportunity to explain the alleged statement and unequivocally denied making any such statement to Walker and Tigner. Moreover, it is clear that Walker and Tigner's statements are inconsistent with Freeman's deposition testimony, wherein he stated that Munyan had no knowledge of his making of the Munyan Videotape. Consequently, the testimony of Walker and Tigner meets the requirements of extrinsic evidence of a prior inconsistent statement made by Freeman in his deposition testimony. Thus, Walker and Tigner's testimony is admissible under Rule 613(b) for the limited purpose of impeaching the credibility of Freeman, but not as substantive evidence pursuant to Rule 804(b)(3) and Rule 801(d)(1)(A).

Although Walker and Tigner's testimony is admissible, it is firmly established under *Good,* that a Rule 60(b)(2) motion for relief from judgment cannot be sustained based on evidence which is merely impeaching. *See Good,* 149 F.3d at 423. Here, Walker and Tigner's testimony is admissible under Rule 613(b) only to impeach the credibility of Freeman. As such, Plaintiffs' Rule 60(b)(2) Motion cannot be granted. Therefore, Plaintiffs' Motion For Relief From Judgment based on newly discovered evidence pursuant to Rule 60(b)(2) is **DENIED.**

## IV. PLAINTIFFS' MOTION FOR NEW TRIAL

Under FED.R.CIV.P. 59(a), "a new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in action at law in the courts of the United States." Like Rule 60(b) motions, Rule 59 motions are committed to the sound discretion of the district court. *See Monette v. AM–7–7 Baking Co.,* 929 F.2d 276, 280 (6th Cir.1991).

Where a trial court is faced with a challenge directed at the weight of the evidence, as in this case, the court is required to "compare the opposing proofs, weigh the evidence, and set aside the verdict if it was of the opinion that the verdict [was] against the clear weight of the evidence." *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1487 (6th Cir.1991). The motion should be denied if the jury's verdict is one which could reasonably have been reached, but a verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable. *See id.*

In this case, at first glance, based on the evidence presented at trial, there appears to be sufficient evidence to support the jury's verdict. Where a jury's verdict is based on legitimate, non-fabricated evidence presented at trial, the Court is not willing to second guess the conclusions reached by the jury or to replace the jury's assessment of the evidence with its own. *See K & T Enterprises, Inc. v. Zurich Ins., Co.,* 97 F.3d 171, 175–76 (6th Cir.1996) ("The judgment of this court should not be substituted for that of the jury."). Such post-verdict review would undermine the principles upon which our jury systems rests. But that is not this case.

Here, the Court is "reasonably well satisfied" that crucial evidence, evidence which *might* have led the jury to reach a different verdict, was fabricated. *See Gordon v. United States,* 178 F.2d 896, 900 (6th Cir.1949). Thus, this Court must analyze the jury's verdict not in light of whether it was against

the manifest weight of evidence, but in light of whether the jury's verdict was tainted by fabricated evidence as to deprive the Plaintiffs' of a fair trial.

Under Rule 59, a trial court is obligated to order a new trial to prevent the miscarriage of justice. *See Davis,* 912 F.2d at 133. When considering a motion for a new trial, a trial court may consider facts arising after a jury has rendered a verdict, if it would work a "substantial injustice" on a party not to do so. *See id.* "The governing principle in the Court's acting on a motion for new trial is whether, in the judgment of the trial judge, such course is required to prevent an injustice; and where an injustice will otherwise result, the trial judge has the duty as well as the power to order a new trial." *Id. (citing Kilgore v. Greyhound Corp.,* 30 F.R.D. 385, 387 (E.D.Tenn.1962)). Similarly, in *Hawkes v. Internal Revenue Service,* 467 F.2d 787 (6th Cir.1972), the Sixth Circuit affirmed the obligation "to take notice of changes in fact or law occurring during the pendency of a case on appeal which would make a lower court's decision, though perhaps correct at the time of its entry, operate to deny litigants substantial justice." *Id.* at 793.

In *Gordon v. United States,* 178 F.2d 896 (6th Cir.1949), the Sixth Circuit established the standard for granting a new trial when it is discovered, after trial, that false evidence was presented at trial. *Gordon* involved a witness who recanted his testimony following defendant's conviction for various criminal offenses. Although *Gordon* is a criminal case, the standard for granting a new trial has been applied to civil actions. *See e.g., Davis,* 912 F.2d at 134. In *Gordon,* the Sixth Circuit stated:

> A new trial should be granted where the court is reasonably well satisfied that the testimony given by a material witness is false; that, without it, a jury *might* have reached a different conclusion; that the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it *or* did not know of its falsity until after trial.

*Id.* at 900 (emphasis added). Accordingly, under *Gordon,* a new trial is appropriate where the court is reasonably certain that the testimony given by a material witness is false, that without that evidence, the jury might have reached a different conclusion, and the party seeking a new trial did not know of the falsity of the testimony until after trial. *See id.; see also Davis,* 912 F.2d at 134.

In this case, the testimony of Patricia Munyan meets the *Gordon* standard for granting a new trial. As a threshold consideration, this Court is "reasonably well satisfied" that the deposition testimony of Munyan shown to the jury at trial was false. Specifically, the Court is convinced that Munyan's testimony that she was unaware that Freeman was making the videotape was false. The Munyan Videotape appeared contrived; it reflected amateur efforts at an "indie" short film production. Freeman was the director and Munyan was the lead actress. The dialogue was too carefully orchestrated, and the parties physically positioned too perfectly, for this to be a surreptitious filming of innocent, spontaneous conversation. For example, in one instance in the Munyan Videotape, Freeman and Munyan, sitting directly in front of the video camera engaged in the following dialogue:

> FREEMAN: What the hell happened anyway?
>
> MUNYAN: They was saying that a supervisor—some supervisors at work where I work on Frebis were discriminating. And they weren't really, you know. (Inaudible) just cause a bunch of trouble. And she talked to me and asked me to go on the Civil Rights Commission and said what she gets she'll split. I said okay.
>
> * * * * * *
>
> FREMAN: I just don't know that much about it. That's the thing. I just never even heard that much about it.
>
> MUNYAN: It's a discrimination charge. A bunch of niggers said that UDF discriminated. I was mad at UDF because I went up there to take my leave of absence and stuff and Bill [Bales] acted like I was a fuckin' (inaudible) or some-

thing. So I'm going to get even with that son-of-a-bitch, too.

In effect, the Munyan Videotape, if fabricated to sell to UDF, gave UDF exactly what it needed: a statement that Plaintiffs were not discriminated against, and a motive—revenge—for a key witness to have lied before the Civil Rights Commission.

Moreover, the Court is persuaded by the testimony of Walker and Tigner, suggesting that Munyan was aware of the videotape, and was in fact a participant in the making of the videotape as a scheme to make money. Walker and Tigner have no apparent interest in this litigation, and thus have no reason to fabricate testimony. Munyan, on the other hand, if the testimony of Walker and Tigner is to be believed, had an economic incentive to participate in the creation of the videotape. Both Freeman and UDF admit that Freeman sold the videotape to UDF for $10,000. And if, as the Court reasonably believes, the videotape was contrived, then Munyan, Freeman, and UDF benefitted from this false evidence—all to the detriment of the Plaintiffs and the integrity of our judicial system. Indeed, the law of this Circuit does not countenance verdicts based on fabricated evidence, as such verdicts taint our judicial process:

> [T]here is a class of cases where some irregularity so taints the trial that the appearance of impropriety compels a new trial as a prophylactic ... measure ... [T]he fountains of justice must be kept pure and free from suspicion, or the citizen will lose all respect for the laws, and the rights of persons, and property will become insecure. To avoid pollution of the waters of justice, [s]uitors and jurors must not place themselves in a position where their conduct creates suspicion. The administration of justice should not only be chaste, but should not even be suspected.

*Budoff v. Holiday Inns, Inc.*, 732 F.2d 1523, 1526 (6th Cir.1984) (internal citation omitted).

Second, under *Gordon*, a new trial should be granted if, without the false testimony, a jury *might* have reached a different conclusion. There is no question but that the testimony of Munyan was critical in the litigation of this case. UDF elicited evidence that Munyan, as a manager at the store where Plaintiffs worked, first supported Plaintiffs' discrimination claims, then, purportedly in a spontaneous, truthful statement—the Munyan Videotape—recanted the claims of discrimination. UDF used the videotape as the linchpin of its theory that Plaintiffs' case was fabricated. Indeed, Munyan stated on the Munyan Videotape that she lied before the Civil Rights Commission when she said that Plaintiffs were the victims of discrimination. Munyan also suggested in the Munyan Videotape that Plaintiffs may have been the cause of their own discharge. Undeniably, such testimony was compelling, especially where, as here, the evidence seemed otherwise at equipoise.

Additionally, at trial, the credibility of the witnesses was pivotal, as much of this case turned on accusations and denials. Undoubtedly, the jury weighed heavily Munyan's credibility in her testimony in rendering its verdict. In her deposition testimony before the jury, Munyan offered several reasons for her videotaped conversation, including intoxication and attempting to placate her boyfriend; however, the Walker and Tigner testimony provides another viable reason for the conversation, *i.e.*, to reap a $10,000 payday from UDF. Had the jury been aware of this potential and probable motive, it is very likely that the jury *might* have reached a different conclusion.

Third, the Court is satisfied that Plaintiffs did not know of the falsity of Munyan's testimony until after the trial, and exercised reasonable diligence in procuring the newly discovered evidence. When Walker contacted Reginald Cooke in June of 1998, he did not convey the nature of the information that he possessed concerning the Munyan Videotape. Walker merely insisted that he knew information regarding the case and requested Cooke's legal representation in an unrelated matter. The facts presented in Plaintiffs' Motion For Relief From Judgment and sworn affidavits establish that Reginald Cooke received numerous calls from unknown sources during the summer of 1998 concerning the UDF litigation. In fact, Cooke's affidavit estimates that the number of telephone calls he received concerning this case ranged well into the hundreds. Moreover, most of the calls received were not helpful or requested monetary compensation

for purported information. Plaintiffs were therefore required to make strategic decisions concerning which leads to investigate and which leads to dismiss as frivolous.

It is clear that Plaintiffs did not know the nature of Walker and Tigner's testimony prior to the entry of final judgment in this case. Furthermore, in light of the volume of calls received from unknown sources concerning this, a high profile case, with increased media scrutiny, the Court is satisfied that Plaintiffs acted reasonably, and exercised due diligence in securing the newly discovered evidence.

The Court is convinced that equity requires that a new trial be granted. Under the rule established in *Gordon*, the Court is satisfied that the testimony of a material witness, Patricia Munyan, was false, that without such false testimony the jury *might* have reached a different verdict, and Plaintiffs did not know of falsity of her testimony until after trial. Therefore, Plaintiffs' Motion for a New Trial pursuant to Rule 59(a) is **GRANTED.**

### V. CONCLUSION

Based on the foregoing reasons, Plaintiffs' Motion for Relief from Judgment is hereby **DENIED,** and Plaintiffs' Motion for New Trial is hereby **GRANTED.**

**IT IS SO ORDERED.**