**Jean HAMPSHIRE, Plaintiff–Appellant,**

v.

**William J. HENDERSON, U.S. Postmaster General, Defendant–Appellee.**

**No. 00–1047.**

United States Court of Appeals, Sixth Circuit.

June 21, 2001.

---

Before BOYCE F. MARTIN, JR., Chief Judge; MOORE, Circuit Judge; O'MALLEY, District Judge.*

* The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

PER CURIAM.

Jean Hampshire appeals the district court's grant of summary judgment to the U.S. Postal Service on her disparate treatment claim filed under the Rehabilitation Act and Title VII of the Civil Rights Act. For the following reasons, we AFFIRM.

## I.

Hampshire was employed by the U.S. Postal Service from October 22, 1977, until her dismissal on September 23, 1995. She alleges that she was dismissed because she suffers from epilepsy. The Postal Service counters that it terminated her employment because she was involved in an altercation with a county road worker.

Hampshire experienced her first epileptic seizure in 1991 and soon began taking medication to control the effects of her condition. On March 8, 1994, Hampshire experienced another seizure, and her doctor recommended that she not drive for a period of time. Her supervisors reassigned her from driving a postal truck, but after a week or so of her new assignment, she took a leave of absence, stating that she did not have a reliable way to get to work. On September 8, Hampshire returned to her former job of driving a postal truck and continued in that position until her dismissal. From March to May 1995, Hampshire was hospitalized for chemical dependency.

On July 19, Hampshire had an altercation with Roxanne Everett, an employee of the Oakland County Road Commission. While driving her postal truck on a delivery route, Hampshire hit a large pothole. When she came to the next street, she saw Everett in an orange road commission truck. Hampshire motioned for Everett to stop and then approached Everett's truck. Hampshire and Everett recount differently the ensuing conversation, particularly the tone and the amount of profanity and physical contact involved. Both agree that Hampshire was angry about the condition of the roads and wanted Everett to tell her whom to contact about the roads. Hampshire swore at Everett, causing Everett to ask Hampshire's name and her supervisor's name so she could report the incident. At some point in the argument, the upper part of their bodies touched. Everett called for help from her truck, and Hampshire left. Later in the day, Everett called the post office and talked to Postmaster Donald Hall. He asked Everett to submit a written report, which she did. When Hampshire returned to the office that afternoon, Hall spoke with her and listened to her version of the incident.

On July 31, the Postal Service made an emergency placement of Hampshire on off-duty status. After further investigation, Postmaster Hall recommended that Hampshire's employment be terminated. Robert Willeart, the Post Office Operations Manager, approved the termination. The postal workers' union filed grievances challenging both the emergency suspension and the removal. On February 16, 1996, the arbitrator denied both grievances and sustained the discipline.

After exhausting her administrative remedies, on December 23, 1998, Hampshire filed a complaint in federal district court, alleging disability discrimination. (The complaint also included claims of age and sex discrimination, but she later dropped those claims.) On August 31, 1999, the district court issued a discovery order directing the Postal Service to "disclose the names of all employees who have committed assaults that were of a similar character to the assault committed by plaintiff for the period of time December 1, 1991, to August 1, 1995, and who at the time of the assault were supervised by either Donald Hall or Robert Willeart." After discovery was completed, the Postal Service filed a motion for summary judg-

ment, which the district court granted on December 9. Hampshire appeals the district court's decision.

## II.

We review de novo a district court's grant of summary judgment. *See Gribcheck v. Runyon,* 245 F.3d 547 (6th Cir. 2001). Summary judgment is granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed. R.Civ.P. 56(c).

 Hampshire raises a claim of disparate treatment because of her disability. Because she has no direct evidence of discrimination, we apply the familiar three-step burden-shifting *McDonnell Douglas/Burdine* framework to analyze her claim. *See Burns v. City of Columbus,* 91 F.3d 836, 843 (6th Cir.1996). First, Hampshire must set forth a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The burden then shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. *Id.* If the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The ultimate burden of persuasion remains at all times with the plaintiff. *See id.*

 We conclude both that Hampshire adequately set forth a prima facie case of discrimination and that the U.S. Postal Service stated a legitimate, nondiscriminatory reason for terminating Hampshire's employment—the July 19, 1995, incident with Roxanne Everett. At this point in the analysis on summary judgment, "the plaintiff must answer the defendant's nondiscriminatory reasons by demonstrating that a reasonable jury could find by a preponderance of the evidence that the defendant's stated reasons are pretextual." *Gribcheck v. Runyon,* 245 F.3d 547 (6th Cir.2001). Plaintiffs have three options for showing pretext: 1) that the defendant's stated reason has no basis *in fact,* 2) that the stated reason did not *actually* motivate the discharge, or 3) that the stated reason was *insufficient* to motivate the discharge. *See Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir.1994). Hampshire does not present evidence to show either that the altercation with Everett did not in fact happen, that the discharge was more likely motivated by discrimination than by the altercation, or that the altercation was not sufficient to motivate her discharge. *See id.* Because she does not present this type of evidence, Hampshire does not show pretext and consequently fails the final step of the *McDonnell Douglas* framework.

## III.

 Hampshire raises an issue regarding the evidence available to her to prove her discrimination claim. The district court's discovery order was limited to "names of all employees who have committed assaults that were of a similar character to the assault committed by plaintiff for the period of time December 1, 1991, to August 1, 1995, and who at the time of the assault were supervised by either Donald Hall or Robert Willeart." Hampshire argues that the order instead should have required records from all of the Royal Oak District, including employees of Jane Pesonen, Supervisor of Customer Service, who also worked in labor relations, thus expanding the pool of "similarly situated" employees to which she could compare herself.

 We review discovery matters under an abuse of discretion standard. *See*

*Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir.1996). Abuse of discretion is "a definite and firm conviction that the trial court committed a clear error of judgment." *Davis v. Jellico Community Hosp. Inc.,* 912 F.2d 129, 133 (6th Cir.1990) (internal quotation omitted).

We have held that "similarly situated" employees are those who "have dealt with the same supervisor, have been subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992). We have cautioned that applying the *Mitchell* factors to every plaintiff could remove the protection of the law from employees holding unique positions and that instead we should "simply require that the plaintiff demonstrate that he or she is similarly[ ] situated to the non-protected employee in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 353 (6th Cir.1998). In this case, the district court's discovery order followed these guidelines on determining similarly situated employees. Pesonen testified that she was not a part of the decision making process in Hampshire's case, and therefore the district court did not err in excluding her supervisory jurisdiction in its discovery order. We conclude that the district court did not abuse its discretion in setting limitations on the discovery order.

### IV.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to the U.S. Postal Service.